No. 15,561.

ELIZABETH WILLY *v.* ATCHISON, TOPEKA AND SANTA FE
RAILWAY COMPANY ET AL.

JOYCE M. WILLY *v.* ATCHISON, TOPEKA AND SANTA FE
RAILWAY COMPANY ET AL.
(172 P. [2d] 958)

Decided September 3, 1946.

Mr. A. X. ERICKSON, Mr. CON K. O'BYRNE, for plaintiffs in error.

Messrs. GRANT, SHAFROTH & TOLL, Mr. GRANT E. McGEE, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

ELIZABETH WILLY brought an action against the Atchison, Topeka and Santa Fe Railway Company, N. J. Morahan and W. J. Schwarz to recover damages in the sum of $5,000 for the death of her husband, occasioned, as she alleged, by the negligence of defendants which resulted in a collision between decedent's automobile and a train of the company operated by the individual defendants. She also, in her own right and as next friend of Joyce M. Willy, her infant daughter, instituted another action in which she sought to recover judgment

for and on account of medical care and attention for the daughter who was injured in the collision. In this latter action Joyce, by her next friend, also sought to recover $15,000 damages for personal injuries which she sustained in the accident. The two cases were consolidated, and a jury trial resulted in verdicts for defendants and consistent judgments were entered accordingly. To review these judgments plaintiffs bring the cause here by writ of error.

We will refer to plaintiffs in error, plaintiffs below, as plaintiffs or by name, and defendants in error, defendants below, will be designated as the company, and the individuals by name.

The collision occurred at a railroad crossing outside the city limits of the city of Englewood, Colorado, on West Oxford avenue, which runs in an easterly and westerly direction, defendant company's tracks running generally in a northerly and southerly direction. Plaintiffs, together with the husband and father, who was driving the automobile, had lived westerly of the railroad tracks approximately six months and frequently crossed the same at a point north of the crossing at which the collision here involved occurred. On the evening of December 1, 1942, the Willy family, consisting of Elizabeth, Joyce and the deceased husband, had visited at a friend's house until about 10:30 o'clock, when they proceeded westerly toward the railroad tracks. The night was cold, and the automobile was being driven at the rate of about ten miles per hour, in low gear. On approaching the railroad crossing, Elizabeth noted a warning sign to her right about 200 feet distant and a similar sign at her left a short distance ahead. With reference to the warning signs and the occurrences immediately prior to, and at the time of, the collision plaintiff Elizabeth Willy testified, inter alia:

"Q. * * * I believe you testified when you were at a point about 25 feet east of the track you looked to your right. A. As we drove down the road I saw the signs

over there down on the right-hand side of the road, the highway stop sign. Q. The highway stop sign before you got to Santa Fe? A. The first I saw this was while I was looking to the left. I saw the railroad crossing sign on the left-hand side of the road, and wondered where the track was. I wondered about the sign on the left-hand side of the road; we must have crossed it. Q. In other words, you wondered about where the track was as you approached the railroad? A. The first I saw the sign was on the left-hand side of the road; the sign should be on the right-hand side of the road, not the left-hand. Q. You knew the railroad track was in the immediate vicinity, and you wondered where it was? A. Well, yes, I wondered. The sign was on the left-hand side; I wondered where it was. Q. You wondered where the track was, I believe you stated, when you were about 45 feet east of the track? A. I wouldn't say 45 feet east.

\* \* \*

"Q. When, if ever, did you stop and look and endeavor to find out if there was a train on any tracks in front of you? A. As soon as I saw the sign down on the right-hand side of the road, I began immediately looking. Q. When you saw the sign on the left-hand side of the road you paid no further attention? A. I wondered where the track was. Q. But you paid no further attention to where the track was, is that right? A. I began wondering where the track was. In a second or two I heard the rumbling of the wheels, and then we were struck.

\* \* \*

"Q. And at a point 25 feet east of that crossing you can see all the way to Littleton, can you not? A. At night? Q. Let me put it this way: Your vision is unobstructed all the way to Littleton? A. Well, at night you can't see any farther than the lights are. Q. That is right, but there is no obstruction. A. That all depends where you are on the road. You have to be prac-

tically on the tracks before you can see, there are so many obstructions and trees and houses.

\* \* \*

"Q. You saw the sign, you knew the tracks were there, and you proceeded to cross? A. I wouldn't say I knew a track was there. Why would I? The proper warning wasn't there. Q. Did you think there was a railroad track anywhere around this sign? A. I began looking for one. Q. As a matter of fact, the sign post had a cross post on it saying "Look Out For The Cars," didn't it? A. That is right. Q. And did you think then there was a railroad track anywhere around? A. I naturally thought there was one some place, but the rule was warning signs aren't to be on the left-hand side of the road.

\* \* \*

"Q. The sign on the other side of the street, on your left-hand, where were the tracks that it apparently related to? A. Well, they were on the—the sign, and then the tracks on. Q. And where would you expect to find the tracks, if you did any thinking about it? A. Well, we would have passed them, or be right on top of them. Q. Is that what you thought at that time? A. Well, I wondered where they were. We hadn't crossed any."

Defendants' exhibits 1, 2 and 3 were identified by plaintiff Elizabeth Willy as photographs of the crossing and the immediate surroundings. They present irrefutable evidence that there were no obstructions, such as trees or houses, which would prevent a clear and unobstructed view of the railroad tracks for great distances south of the railroad crossing.

In both actions the specific acts of negligence with which the defendants were charged are:

"That the *defendants* were guilty of negligence and carelessness at the time and place aforesaid, in that:

"(a) Defendants operated 'said engine across said highway at a dangerous, reckless and excessive rate of speed.

"(b) Defendants operated said engine across said highway without reasonable lights for the purpose of apprising users of said highway approaching said track, of the approach of said train, in the night time.

"(c) Defendants operated said train along a track so constructed across said highway that its presence could not be reasonably observed by users of said highway.

"(d) Defendants operated an engine across said highway when the presence of said track was not marked by any sign in a place or position where the same should reasonably be to apprise users of said highway of the presence of said railroad track.

"(e) Defendants operated an engine along a track across said highway in such manner that the headlights from such engine would reasonably cause users of said highway to believe that the, said train was not actually on said track.

"(f) Defendants operated an engine across said highway under conditions which prevented the driver of said automobile from observing the approach of said train when the driver stopped to look and listen for a train, thereby causing him to believe that a train was not being operated upon said track, and that he might safely pass.

"(g) Defendants operated a train across said highway without sounding a bell or other warning.

"(h) Defendant corporation did not place any warning sign or maintain any signal to reasonably indicate the presence of a track arcoss said highway, *and said defendants, knowing such condition, negligently and carelessly operated a train across said highway in manner and form hereinbefore alleged.*" (Italics ours)

The defendants' answer to Elizabeth Willy's action contained three defenses: 1. A general denial; 2. contributing negligence on the part of Leonard J. Willy, the

deceased husband of plaintiff Elizabeth; and, 3. contributory negligence on the part of Elizabeth Willy. The answer of defendants to the cause of action wherein Joyce M. Willy appeared by Elizabeth Willy, her next friend, contained two defenses: 1. A general denial; and, 2. contributory negligence on the part of Leonard J. Willy, the father of the minor child. In the answer to the second cause of action of Elizabeth Willy, defendants' answer contained three defenses: 1. A general denial; 2. contributory negligence on the part of Leonard J. Willy; and, 3. contributory negligence on the part of Elizabeth Willy.

At a pretrial conference the following order was entered by the court: "It is ordered, That the complaint in Case No. 6290 [Joyce M. Willy, by Elizabeth Willy, plaintiffs, vs. Atchison, Topeka & Santa Fe Railway Company, et al, defendants] is *based upon the joint negligence of the defendants and not the separate negligence of the defendant railway company, referring to sub-section h of paragraph 5; that if the plaintiffs so desire they may amend their complaint to charge the defendant railway company with separate negligence;* and that the same order shall apply to the same allegation in Case No. 6289 [Elizabeth Willy, plaintiff, vs. Atchison, Topeka & Santa Fe Railway Company, et al., defendants]." (Italics ours)

Deceased's earnings were in excess of $150 a month; he was 26 years of age, and had an expectancy of 38.11 years.

The train involved in the collision was an "extra" running from Pueblo to Denver, in charge of Morahan as engineer and Schwarz as conductor. These two defendants and two other trainmen testified that at the time of the collision the train was running between 35 and 40 miles per hour; the locomotive bell was automatically ringing; its headlight burning and casting a beam for a distance of 1200 feet; and the whistle for the West Oxford avenue crossing had been blown.

A map of the crossing and immediate surrounding territory, made partly from a survey on the ground and partly from the records in the company's office, was introduced in evidence by defendants, and a civil engineer testified with reference thereto. The accuracy of the map is unquestioned, and the civil engineer's testimony is unchallenged. From these sources we learn that there is a one story brick building near the southeasterly corner of West Oxford avenue and the railroad track. This building is surrounded by a wire fence, the meshes of which are six by five inches in size. It appears that the right of way extends fifty feet easterly of the tracks as it approaches West Oxford avenue and that the nearest point of the building is seventy-seven and seven-tenths feet easterly from the railroad track. At a point twenty feet east of the railroad track at the West Oxford avenue crossing, the view southerly along the railroad is unobstructed for a distance of approximately two miles, and there are no physical objects to prevent one from observing a train at that distance. At a point fifty feet east of the railroad track at West Oxford avenue crossing, there is a clear and unobstructed view to the south along the right of way for a distance of 3,604 feet, and at a point 100 feet east of the West Oxford avenue crossing there is an unobstructed view to the south along the right of way for a distance of 514 feet. The witness testified that all the distances were measured from the center of West Oxford avenue east of the railroad track and he also gave testimony as to greater distances easterly from the railroad track which probably are not important here because there were some obstructions which would, in a measure, obstruct the view to the south along the right of way. The railroad warning sign on the left of the highway is about twelve and a half feet high, painted white, and bears the following words: "Railway Crossing, Look Out for Cars" painted in black letters.

The specification of points upon which plaintiffs rely

for a reversal may be summarized as follows: 1. Error resulting from the giving of erroneous instructions; 2. improper consolidation of cases for trial; 3. that the verdicts are contrary to both the law and the evidence.

1. There were twenty-six instructions given the jury. In one instruction the court specifically advised the jury that certain instructions were applicable and that certain others were inapplicable to the action in which Joyce M. Willy, the minor, was interested. In the specification of points, but two of these instructions are properly before us for consideration, i. e., numbers 11 and 22. Instruction number 11 was by the court limited to the action in which Elizabeth Willy was the plaintiff, and the jury was instructed to disregard it in their deliberations in connection with the action brought for Joyce M. Willy's benefit. It reads as follows: "The jury is instructed that negligence means failure to observe that degree of care, caution and vigilance which the circumstances demand. In other words, it is the want of that care and caution which the ordinarily careful and prudent person would exercise under all the circumstances of the case. You are instructed, however, that negligence is not to be presumed from the mere occurrence of an accident. Contributory negligence, as used in these instructions, means the failure of the plaintiff, Elizabeth Willy, or Leonard J. Willy, to observe for the protection of Leonard J. Willy that degree of care, precaution and vigilance which the circumstances justly demand. In other words, it is the want of that care and precaution on the part of either of them which an ordinarily careful and prudent person would exercise under all of the circumstances of the case. The failure to do what an ordinarily careful and prudent person would have done under all the circumstances of the case, or the doing of something that an ordinarily prudent person would not have done under the circumstances of the case, is contributory negligence. *If the plaintiff, Elizabeth Willy, or the deceased, Leonard J. Willy, was guilty of contrib-*

*utory negligence which contributed to the death of Leonard J. Willy, the plaintiff. Elizabeth Willy cannot recover."* (Italics ours)

Elizabeth Willy's action was brought under the provisions of section 2, chapter 50, '35 C.S.A., which reads: "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the party injured."

██ ██ As we construe this section, if Leonard J. Willy was guilty of contributory negligence, he would be barred from maintaining an action against the defendants, or any of them, by reason thereof, and if he was barred by reason of his contributory negligence, his beneficiary likewise would be barred. We reach this conclusion because of the wording of the statute which limited Leonard J. Willy's cause of action to a situation where "the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damanges in respect thereof, * * *"; consequently, if Leonard J. Willy was guilty of contributory negligence, no cause of action survived him. If he could not have successfully maintained an action because of his contributory negligence, his widow likewise would be barred. This instruction cannot be so construed as to charge the widow, under the circumstances of this case, with imputed negligence, for imputed negligence is not here involved. In other words, as we construe the statute, it is intended to confer upon Elizabeth Willy only such rights as Leonard J. Willy would have possessed had he survived his injuries. He then could bring an action based upon the factual situation existing at the time of the collision, and

plaintiff Elizabeth Willy here is limited in her right of recovery to the same factual situation with all proper defenses thereto.

■ We then are confronted with the problem and the legal effect of Elizabeth Willy's contributory negligence if the jury found such to have existed. Would Elizabeth Willy be entitled to recover if the jury determined from the evidence that her negligence proximately caused or contributed to her deceased husband's death?

If we assume that Leonard J. Willy may not have been guilty of contributory negligence, under the challenged instruction the jury was advised that contributory negligence on the part of Elizabeth Willy would prevent her recovery. According to Elizabeth Willy's testimony, she saw the railway warning and knew that there was a railway in the immediate vicinity and that it had not been crossed. She testified that immediately upon seeing the warning sign she began to look both to the right and left to discover any approaching train and in a second or so thereafter the collision occurred. Assuming that the automobile was being driven at the rate of ten miles per hour, as plaintiff Elizabeth Willy testified, she was in position, at the time she first saw the warning sign, to have seen the train approaching at a distance of more than a thousand feet. This would have given her ample time to have warned the driver of the automobile of the approaching train and thereby avoided the collision. She says she saw no train approaching and that her view to the south was obstructed by "trees and houses." Assuming an obstructed view, it became plaintiff Elizabeth Willy's duty to exercise additional care and caution. It is, however, obvious from the undisputed and uncontradicted testimony of the civil engineer and photographic exhibits of the locality at this particular railroad crossing that there were no obstructions to prevent her clear view of the approaching train. Had she looked to the south, she could have seen the

approaching train in ample time to have prevented the collision. Evidence that the witness looked to the south and could not and did not see the approaching train when her view was unobstructed, is not worthy of consideration. Irrespective of the doctrine of imputation of negligence, it was plaintiff's duty to exercise ordinary care for her own safety, and, when reasonably necessary, to warn the driver of impending danger.

■ The burden of proof was on plaintiffs to prove negligence; a like burden was on defendants to prove contributory negligence. If the jury, upon competent evidence before it—and there was such evidence— determined that plaintiff Elizabeth Willy did not exercise that degree of care and caution that an ordinarily prudent person should have exercised under like conditions, it properly could, as it did, find that she was guilty of such contributory negligence as would bar her recovery. *Kutchma v. Atchison, T. & S. F. Ry. Co.*, 23 F. (2d) 183.

In *Phillips v. Denver Co.*, 53 Colo. 458, 471, 128 Pac. 460, we quoted with approval the following from *Wolf, Adm'r v. Lake Erie & W. R. Co.*, 55 O. St. 517, 45 N.E. 708: "It therefore seems clear that in arriving at the total amount of damages to be awarded under the statute as amended, the jury should consider the pecuniary injury to each separate beneficiary (not found guilty of contributory negligence), but return a verdict for a gross sum, which sum should be distributed among the beneficiaries not found guilty of contributory negligence. As to beneficiaries found guilty of contributory negligence, no damages should be awarded on their account, and the jury should find in its verdict which, if any, of the beneficiaries were guilty of such contributory negligence. This would no more complicate the trial than is usual in trials for torts, in which it often occurs that some are discharged, and others held liable."

We have examined the Ohio statute and find that it is almost identical with that here under consideration ('35 C.S.A., c. 50, §2). Under our statute Elizabeth Willy

was the person entitled to sue ('35 C.S.A., c. 50, §1), and it seems plain that in her action the defense of contributory negligence was available as against her if by her negligence she contributed to the death of her spouse.

"Contributory negligence of a beneficiary is generally held to bar an action for death brought by or for the benefit of such beneficiary." 25 C.J.S., p. 1141, §46 (b).

"The general rule is that contributory negligence is available as a defense against such beneficiaries of an action for wrongful death as by their negligence proximately contributed to the death of the deceased, but not against those who are not guilty of such negligence, unless the contributory negligence of one beneficiary is, under the circumstances and the law of the particular jurisdiction, imputable to the other." 16 Am. Jur., p. 90, §133.

Applying the rule announced in *Phillips v. Denver Co., supra,* and which is supported by the general law elsewhere, the question of Elizabeth Willy's contributory negligence was properly submitted to the jury for determination, and it must have determined that either the decedent was guilty of contributory negligence—in which event Elizabeth Willy's action was not maintainable—or that Elizabeth Willy was guilty of contributory negligence, in which event the result would be the same.

There was no error in instruction number 11 of which Elizabeth Willy could take advantage.

■ Elizabeth Willy and Joyce M. Willy complain of instruction number 22 and specify the giving thereof as one of the points upon which they seek a reversal. The instruction reads:

"In the prior instructions the defendants have been treated together. You are instructed, however, that you may find that defendant N. J. Morahan and the defendant The Atchison, Topeka and Santa Fe Railway Company may be guilty of negligence and that defendant Schwarz may nevertheless be free from negligence.

"You are further instructed that defendant Schwarz and The Atchison, Topeka and Santa Fe Railway Company may be found guilty of negligence and that the defendant Morahan is not guilty of negligence.

"You are further instructed, however, if you find both Morahan and Schwarz are not guilty of negligence, you cannot then find The Atchison, Topeka and Santa Fe Railway Company guilty of negligence or liable in this action."

We have set forth the only charges of carelessness and negligence of which these plaintiffs complain. At the pretrial conference the court entered an order specifically finding that the several acts of negligence charged constituted joint negligence, and, further, that under the allegations of the complaint, no one of the defendants was charged with separate negligence. The court, by order, extended to the plaintiffs the opportunity of amending their complaint, if they were so advised, so as to charge the defendants, or some of them, with separate negligence. Plaintiffs did not so amend.

We call attention to the fact that the allegation with reference to the negligence and carelessness of which plaintiffs complain is: "That the defendants were guilty of negligence and carelessness at the time and place aforesaid, in that:" It cannot successfully be questioned that this is a charge of joint negligence. The only charge of carelessness and negligence that approaches individual negligence and carelessness is subdivision (h) hereinbefore set forth. However, in this subsection plaintiffs charge the defendant corporation with failing to "place any warning sign or maintain any signal to reasonably indicate the presence of a track across said highway," and this is followed with the charge of carelessness and negligence in operating a train across the highway. Plaintiffs do not complain that there was no warning of the presence of the railroad; plaintiff Elizabeth Willy saw the warning sign on her left on West Oxford avenue, and, according to her testimony, immediately be-

came alert to the extent that she looked both north and south for approaching trains. It is true that she several times referred to the fact that the warning sign was on her left instead of right on West Oxford avenue. However, as we understand the purpose of the warning sign, whether it be on the right or on the left side of the person approaching the highway, it is to warn those using the thoroughfare that a railroad track is in the immediate vicinity, and, according to plaintiff Elizabeth Willy's own testimony, this purpose was accomplished. Furthermore, there was no competent evidence before the court to justify the jury in finding that the warning sign was not where it should properly be or that there was negligence in failing to locate it on the right instead of the left side of the street.

There is nothing in the record to indicate that plaintiff's counsel disagreed with the court in its determination that the complaint charged joint negligence. The objection made to the instruction was, "The plaintiffs object to Instruction 22, in that such instruction bars recovery against the Atchison, Topeka and Santa Fe if it was guilty of any of the acts of negligence alleged." This objection may possibly be sufficient to raise the general objection as to joint negligence, and we have so considered it. It is clear to us that the Atchison, Topeka & Santa Fe Railway Company is charged as employer, and under the law as responsible under the doctrine of respondeat superior. It is a general legal principle, and so held in most jurisdictions, that where the employer and his employee are sued jointly in an action based solely on the tortious conduct of the employee and the finding is in favor of the employee, there can be no recovery against the employer. Similarly it has been held that a verdict against the employer and one in favor of the employee is equivalent to a finding that no cause of action exists and, consequently, there can be no judgment against the employer. Under these circumstances, if a verdict against the employer is returned, it should be

set aside and judgment for the employer entered, notwithstanding the verdict. It is our opinion that the complaint charges the defendants with joint negligence, and under the allegations thereof no verdict could properly be returned against any of the defendants individually. Having reached this conclusion, we hold that there was no error in the giving of instruction number 22.

■ 2. The record supports the statement that the cases were consolidated for trial on defendants' motion. The plaintiffs had consolidated two causes of action in one of their cases, i. e., Joyce's cause of action for injuries resulting from the collision, and Elizabeth's action for medical attention and services rendered and to be rendered Joyce. Rule 42 (a), R.C.P. Colo., provides for the consolidation where there is a common question of law or fact involved in the actions, and this was the basis of defendants' motion. This rule clearly "authorizes the consolidation of actions involving a common question of law or fact, and provides that the court may make such orders concerning the consolidated proceedings as may tend to avoid unnecessary costs, or delay. The consolidation of actions for trial which appear to be of like nature and concern themselves with the same or similar questions rests *within the sound discretion of the trial court*, and its action thereon will not be disturbed on appeal except for the abuse of discretion. * * *" (Italics ours) *Skirvin v. Mesta*, 141 F. (2d) 668.

In the instant case there is no denial of the allegations contained in the motion to consolidate, and no showing that prejudice resulted by reason of the consolidation. Neither was there any objection to the order of consolidation. It is true that the court in its twenty-six instructions specifically limited some of them to Joyce's cause of action and excluded the others from consideration in connection with her case. It may be that the instructions were rather difficult of separation, but certainly they were not confusing. The rule for consolidation of causes of action, and actions, is a departure from the

Code and gives to the trial judge authority to consolidate in the exercise of his discretion. It is only when it clearly appears that this discretion has been abused that courts of review will hold that the consolidation was prejudicial to a complaining party. There is nothing herein that would justify us in determining that reversible error was committed by the trial court in entering the order of consolidation.

3. The entire record has been carefully studied, and there is nothing therein which suggests to us that the verdict is contrary to the evidence, and we have herein disposed of the legal questions which plaintiffs have brought to our attention by their specification of points. Consequently, we conclude that the verdicts and judgments are contrary to neither the law nor the evidence.

While our sympathies are with the unfortunate plaintiffs, under the settled applicable law of the case we have no alternative but to uphold the decision of the trial court.

The judgments are affirmed.

MR. JUSTICE HILLIARD did not participate.