**Robert DESTAFANO,
Plaintiff-Appellant,**

v.

**Dennis GRABRIAN, and the Diocese of
Colorado Springs,
Defendants-Appellees,**

v.

**Edna DESTAFANO,
Cross-Claimant-Appellant.**

No. 84CA0973.

Colorado Court of Appeals,
Div. II.

Aug. 7, 1986.

Rehearing Denied Sept. 11, 1986.

Certiorari Granted (Destafano)
Dec. 2, 1986.

Peter A. Goldstein, P.C., Peter A. Goldstein, Colorado Springs, for plaintiff-appellant.

Ranson, Thomas, Cook & Livingston, Richard P. Ranson, Colorado Springs, for cross-claimant-appellant Edna Destafano.

Kane & Donley, Hayden W. Kane, Colorado Springs, for defendant-appellee Dennis Grabrian.

Sparks, Dix, Enoch, Suthers & Winslow, P.C., John W. Suthers, Colorado Springs, for defendant-appellee The Diocese of Colorado Springs.

VAN CISE, Judge.

Plaintiff, Robert Destafano (Robert), and defendant and cross-claimant, Edna Destafano (Edna), formerly husband and wife but now divorced, appeal from the judgments dismissing all their claims against defendants Dennis Grabrian (the priest) and the Diocese of Colorado Springs (the diocese). We affirm.

In his claims against the priest and the diocese (the defendants), Robert alleged facts which, for purposes of determining the propriety of a dismissal for failure to state a claim, we must accept as true. *Abts v. Board of Education*, 622 P.2d 518 (Colo.1980). They are as follows: In 1979, he and his then wife Edna were having marital difficulties and decided to seek marital counseling. Both were Catholics "and had faith and confidence in their parish priest," defendant Grabrian. As a result, the couple "entered into a counseling relationship" with the priest. At all relevant times, the priest's supervisors in the defendant diocese "knew or should have known" that the priest "was unsuited for marriage counseling and ... would cause harm to a jeopardized marital relationship."

During the counseling relationship, the priest "commenced a course of conduct" with Edna which the priest "knew or should have known would lead to additional marital problems" between Robert and Edna "and would cause the probable dissolution of their marriage. Despite such actual or constructive knowledge, [the priest] continued on such course of conduct with a reckless disregard for the rights and feelings of [Robert]."

Robert also alleged that the diocese "owed a continuing duty" to him "to reasonably train, interview and supervise parish priests who are doing marriage counseling." However, "with actual or constructive knowledge of [the priest's] prior indiscretions, similar to those with [Edna], the [diocese] did nevertheless wilfully and recklessly with a specific disregard for the rights and feelings of [Robert] fail to adequately interview, train, and supervise [the priest] to see to it that he was not engaged in marriage counseling with vulnerable people such as [Robert] and his wife, Edna."

Robert's complaint alleged further that "[a]s a direct and proximate result of the conduct of the defendants," the priest and Edna "entered into an intimate relationship which contributed to the ultimate dissolution of the marriage" between Robert and Edna. Referring to minor children of that marriage and his learning of the relationship between the priest and Edna, Robert asserted that his "ability to maintain a working parental relationship with Edna has been rendered impossible, and chance of salvaging the marriage was rendered impossible, and he has suffered and endured excruciating mental pain and suffering."

Based on the above allegations, Robert sought compensatory and exemplary damages from the priest and the diocese for:

(1) negligence of the priest in the manner in which he conducted the counseling, and negligence of the diocese in failing adequately to train, monitor, and supervise the priest, (2) the outrageous conduct of both, and (3) their breach of the fiduciary duty owed to him.

In Robert's initial complaint, Edna was named as a defendant, but, in his amended complaint, Robert dismissed his claims against her. In her cross-claims against the priest and the diocese, Edna alleged that she and Robert, having marital difficulties, had sought marital counseling, and had been referred by the diocese to the priest for that purpose. The priest represented himself to be an experienced priest and a skilled professional counselor who would act in their best interests.

She alleged that the couple met with the priest twice, after which Robert was advised to seek his own counselor. Thereafter, the priest "commenced a relationship" with Edna "when she was extremely vulnerable emotionally, and which relationship developed into an adulterous relationship because of the actions [of the priest]." She claimed these actions "breached his fiduciary duty to [her], constituted outrageous conduct and were negligent."

She also alleged that the priest "has engaged in relationships on a regular basis with other women who were in a similar situation" and that "such conduct was known or should have been known" by the diocese. She further alleged that she suffered "severe and permanent emotional injuries, pain and suffering, medical expenses, loss of income and other damages" as a result of the priest's breach of fiduciary duty, his negligent performance of his duty as a marital counselor, his "outrageous, willful and intentional" conduct with regard to her, and the diocese's failure to supervise its priest.

Defendants moved to dismiss Robert's amended complaint and Edna's cross-claims on the ground that they fail to state claims upon which relief could be granted because (1) the claims have been abolished by §§ 13-20-201 through 13-20-208,

C.R.S., and (2) the claims constituted an unreasonable interference into the internal mechanisms of the Roman Catholic Church and were, therefore, constitutionally prohibited. The trial court granted the motions on both grounds, and dismissed all claims.

On appeal, Robert and Edna contend that the amended complaint and cross-claims sufficiently aver claims in negligent counseling, outrageous conduct, and breach of fiduciary duty, and defendants' motions should have been denied. We do not agree. Considering the motions as being for summary judgment under C.R.C.P. 56, *see Kolwicz v. City of Boulder*, 36 Colo.App. 142, 538 P.2d 482 (1975), we conclude that the trial court properly dismissed Robert's claims and Edna's cross-claims.

## I. Robert's Claims

Section 13-20-202, C.R.S. (the "heart balm statute"), provides:

> "All civil causes of action for breach of promise to marry, alienation of affections, criminal conversation, and seduction are hereby abolished."

In *Goldberg v. Musim*, 162 Colo. 461, 427 P.2d 698 (1967), a wife sued her husband's girlfriend for inducing the husband to separate from the wife and not to return to her, making it necessary for her to obtain a separate maintenance decree. The trial court held, and the supreme court affirmed, that the wife's claim was in the nature of an action for alienation of affections and was therefore barred by the heart balm statute, and that the statute was constitutional.

■ In Robert's case, it is the husband suing the person alleged to have "contributed to the ultimate dissolution of the marriage" and seeking recovery of his damages resulting therefrom. But his case is analogous to *Goldberg, supra,* and falls squarely within the abolished action for alienation of affections. *See Nicholson v. Han,* 12 Mich.App. 35, 162 N.W.2d 313 (1968).

Also, in basing his claims on the "intimate relationship which contributed to the

ultimate dissolution of the marriage," Robert is seeking to recover for the priest's "criminal conversation" with Edna while she was still married to Robert—"adultery in the aspect of a tort." *See Hirschy v. Coodley*, 116 Cal.App.2d 102, 253 P.2d 93 (1953).

Accordingly, Robert's claims, however denominated, are based on alienation of affections and criminal conversation, both of which are barred by the "heart balm statute." Also, it is unlawful for any person to file any pleading seeking to recover upon any such causes of action. Section 13–20–205, C.R.S. Thus, the trial court properly dismissed Robert's claims against the priest.

■ Had the priest's conduct constituted an actionable tort, the diocese, absent other defenses, could perhaps have been held responsible under the doctrine of *respondeat superior*. *Willy v. Atchison, Topeka & Santa Fe Ry.*, 115 Colo. 306, 172 P.2d 958 (1946); *Sanchez v. Rice*, 40 Colo.App. 481, 580 P.2d 1261 (1978); Restatement (Second) of Agency §§ 215, 216, and 217 (1958). However, by statute the priest's conduct is not actionable, and the Destafanos have suffered no injuries for which there is a legal remedy. Consequently, there is no foundation upon which liability of the diocese may be premised.

Further, even the allegations that the diocese was negligent in failing adequately to train, monitor, and supervise the priest are insufficient to give rise to liability in the diocese for the effects of conduct which is not tortious and not actionable. Hence, dismissal of the claims against the diocese was proper.

## II. *Edna's Cross-Claims*

■ Seduction is "the act of a man in enticing a woman to have unlawful intercourse with him by means of persuasion, solicitation, promise, bribes, or other means without the employment of force." *Weinlich v. Coffee*, 67 Colo. 382, 176 P. 210 (1918).

Edna's cross-claims are based on an alleged "adulterous relationship" commenced "when she was extremely vulnerable emotionally," and she asks for an award of damages for her injuries suffered as a result of the priest's conduct. In other words, she seeks to recover damages for her own seduction. The cause of action for seduction was specifically abolished by the "heart balm statute." Therefore, her cross-claims against the priest were properly dismissed.

■ Since Edna's claims against the diocese are predicated on the priest's conduct toward her, recovery for which is statutorily barred, dismissal as to the diocese was also proper, for the same reasons set forth above with regard to Robert's claims.

### III.

In view of the affirmances grounded on the "heart balm statute," we need not consider whether the claims of the Destafanos constituted unconstitutional interferences into the internal mechanisms of the Roman Catholic Church.

Judgments affirmed.

METZGER, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting.

### I.

In my view, none of the claims asserted by the Destafanos are barred by the heart balm statute or by the anachronistic rulings concerning the actions abolished in that statute. The scandalous nature of the alleged conduct of the priest should not divert our attention from the true nature of the cause of action alleged by both the Destafanos.

As I read the allegations in both the complaint and the cross-claim, the central contention of wrongdoing asserted against the priest is a breach of fiduciary duty. The Destafanos came to the priest for help with their marriage. He undertook such help and thereby entered a fiduciary relationship with both of them. However, in disregard of that fiduciary relationship, he

not only did not attempt to help but, indeed, began a course of conduct which he knew or should have known would lead to the destruction of their family. That the specific manner in which the breach occurred was to engage in sexual relations with Edna is not of critical importance. The priest could have perpetrated the breach of duty in other ways, *e.g.*, by inducing Robert to convey the family's assets to him. *See Adams v. Paine, Webber, Jackson & Curtis, Inc.*, 686 P.2d 797 (Colo.App. 1983). Hence, the gist of the tort alleged is not alienation of affections or criminal conversation as the majority asserts; rather it is breach of fiduciary duty. And, as to such tort, the allegations of the complaint are sufficient to survive a motion for dismissal under C.R.C.P. 12(b).

A priest acting as a marriage counselor should no more be shielded from liability by the heart balm statute than were psychiatrist-counselors protected by such statutes in *Roy v. Hartogs*, 85 Misc.2d 891, 381 N.Y.S.2d 587 (1976) and *Cotton v. Kambly*, 101 Mich.App. 537, 300 N.W.2d 627 (1980).

### II.

As to the claims against the diocese, the doctrine of respondeat superior is applicable to impose vicarious liability on the diocese for the breach of fiduciary duty by the priest. *See generally Saint Mary's Academy v. Solomon*, 77 Colo. 463, 238 P. 22 (1925) (charitable institutions may be liable in tort and liability not limited only to selecting incompetent servants).

Furthermore, even if the heart balm statute is interpreted so broadly as to bar the claims against the priest, under Restatement (Second) of Agency § 213 (1958), the diocese may be held liable for its own conduct if, as alleged, it knew or should have known of the priest's proclivity to misuse his position as a marriage counselor to achieve his own purposes but nevertheless continued to permit him to engage in such a sensitive role.

### III.

Contrary to the defendants' argument, the First Amendment may not be used to shield the priest and the diocese from liability for their tortious conduct. As stated in *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940):

"The First Amendment religion provisions contain two concepts, 'freedom to believe and freedom to act. The first is absolute, but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.' "

*See also Madsen v. Erwin*, 395 Mass. 715, 481 N.E.2d 1160 (1985).

Religious *belief* is totally beyond the reach of the state, but conduct, even if pursued in the name of religion, must conform to the standards of the community. The obligation to perform one's fiduciary obligations in good faith is such a standard, and the allegation that there was a breach of that obligation may properly be addressed. The issues in this case therefore, do not involve inquiry into doctrinal, spiritual, ecclesiastical, or religious matters.

Accordingly, I respectfully dissent; I would reverse the judgment and remand the cause for trial on all claims.