533 A.2d 1358

**Daniel GASPER**

v.

**LIGHTHOUSE, INC. et al.**

**No. 479, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Dec. 8, 1987.

Certiorari Denied Feb. 24, 1988.

**368**

Robert B. Scarlett (Marr & Bennett, on the brief), Baltimore, for appellant.

Thomas J. Dolina (Power and Mosner, on the brief), Towson, for appellee, Donald A. Derby.

Mark A. Wesker (Mark D. Gately and Miles & Stockbridge, on the brief), Baltimore, for appellee, Lighthouse, Inc.

Argued before WILNER, GARRITY and POLLITT, JJ.

WILNER, Judge.

Under Maryland common law, a man had a well-recognized property interest in both his wife and his marriage. If he was cuckolded, he had a civil action, known as criminal conversation, against the partner to his wife's adultery, in which he could recover damages for the injury to his feelings and his honor.[1] Adultery—"defilement of the marriage bed"—was the gravamen of that action; no other injury to the marital relationship was necessary. *Kline v. Ansell*, 287 Md. 585, 414 A.2d 929 (1980). If the miscreant induced the man's wife to leave him or otherwise interfered with the marital relationship, whether or not adultery occurred, the husband had an allied action for alienation of affections. For this, he could recover not only compensatory damages for the loss of consortium and for the injury to his feelings but, if he could show wanton and malicious

---

1. It has been observed by some that the acts constituting criminal conversation were neither criminal nor conversation.

conduct, punitive damages as well. *Callis v. Merrieweather,* 98 Md. 361, 57 A. 201 (1904).

The action for alienation of affections was abolished by the General Assembly in 1945. The Legislature found that the action had been "subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances...." 1945 Md.Laws, ch. 1010. Not only was the action abolished, but, until 1986, the Legislature had made it a misdemeanor punishable by up to five years in prison for any person, "either as a party or attorney" to file or even threaten to file such an action. Md.Code Ann. Fam.Law art., §§ 3–103 and 3–105.[2] See 1986 Md.Laws, ch. 214. Chapter 1010 was declared to be remedial in nature; the Legislature directed that it be liberally construed to accomplish its purpose. Section 3–101.

Thirty-five years after the abolition of the action of alienation of affections, the Court of Appeals abolished the allied action of criminal conversation, finding it to be in conflict with the State Equal Rights Amendment, Maryland Declaration of Rights, art. 46. *Kline v. Ansell, supra,* 287 Md. 585, 414 A.2d 929.

The question before us in this appeal is whether a husband can do indirectly what he can no longer do directly.

In a complaint filed in the Circuit Court for Baltimore County, Daniel Gasper alleged that (1) in the fall of 1983, he and his wife Nicole were referred to Lighthouse, Inc. for marriage counseling; (2) Lighthouse assigned one Don Derby to be their counselor; (3) they attended counseling sessions twice a week; (4) in August, 1984, Daniel and Nicole separated, but Daniel continued his counseling sessions and attempted to reconcile with Nicole; (5) in December, 1984, Derby announced he could no longer counsel the

---

2. The criminal sanctions for filing such an action were repealed in 1986.

couple; (6) Daniel later learned, and Nicole eventually admitted, that she had been having "an affair" with Derby; and (7) that affair had begun during the time Nicole and Daniel were being counseled by Derby, it included extramarital sexual relations, and it eventually led Nicole to seek a divorce from Daniel.

Daniel's complaint was against both Derby and Lighthouse: Derby was sued directly for his conduct; Lighthouse was sued for failing to supervise Derby properly. The complaint contained eight counts, each based on the general averments noted above. We summarize them briefly:

Count I averred a contractual relationship with the defendants "to have the Defendants help the Plaintiff and his wife solve their marital difficulties" and a breach of that contract.

Count II, captioned "Malicious Breach of Contract," merely added the statement that the defendants' acts or omissions were "outrageous"—that Derby's conduct was characterized by "wanton, reckless, malicious disregard for the welfare and marriage of the Plaintiff, without legal justification or excuse."

Count III charged a breach of fiduciary duty. The gravamen of that complaint was that Derby "improperly misused the confidential communications made to him by the Plaintiff in a manner that directly and proximately resulted in the deterioration and destruction of the Plaintiff's marriage...." Precisely what communications Derby misused or how exactly he misused them is not explained.

Counts IV and V sounded in negligence. Count IV charged the defendants with "negligently, carelessly and improperly counseling the Plaintiff ..."; Count V added that the negligence pled in Count IV was wanton, reckless, and with "malicious disregard for the welfare and marriage of the Plaintiff...."

Count VI purported to state an action for intentional infliction of emotional distress. Daniel claimed that Der-

by's conduct "was so intentional and reckless that it severely interfered with the Plaintiff's marriage, directly and proximately destroying the marriage."

Count VII charged that, by seducing Nicole, Derby had intentionally and maliciously interfered with Daniel's and Nicole's marriage contract. And, finally, Count VIII, captioned "Loss of Consortium," averred that, as a result of the defendants' actions, Daniel lost Nicole's mutual society, affection, and conjugal fellowship.

The Circuit Court, on motion, dismissed the complaint, concluding that all eight counts "rely as a substantial cause of action on alienation of affection and criminal conversation...." We shall affirm.

■ As a preface to our consideration of the issue raised, we wish to make clear that abolition of the actions for alienation of affections and criminal conversation does not preclude a person from maintaining a traditional breach of contract action or a recognized tort action merely because the breach arose from an improper liaison with the plaintiff's spouse or because one effect of the alleged breach or tortious conduct was a disruption or breakup of his or her marriage. See, for example, *Gillespie–Linton v. Miles,* 58 Md.App. 484, 473 A.2d 947 (1984); *Anclote Manor Foundation v. Wilkinson,* 263 So.2d 256 (Fla.Dist.Ct.App.1972). What *is* precluded, however, is the refitting of the abolished actions into other forms. One cannot sue to recover for injuries arising from "defilement of the marriage bed" or from an interference with the marriage by simply casting the defendant's conduct as a breach of contract, or negligence, or some other intentional tort. It is *that* kind of sham that the case law prevents. See, in general, *Nicholson v. Han,* 12 Mich.App. 35, 162 N.W.2d 313 (1968); *Destafano v. Grabrian,* 729 P.2d 1018 (Colo.Ct.App.1986); *Goldberg v. Musim,* 162 Colo. 461, 427 P.2d 698 (1967); *Lund v. Caple,* 100 Wash.2d 739, 675 P.2d 226 (1984); *Arnac v. Wright,* 163 Ga.App. 33, 292 S.E.2d 440 (1982); *Harrington v. Pages,* 440 So.2d 521 (Fla.Dist.Ct.App.1983).

■ In that regard, little need be said about Counts VII and VIII of Daniel's complaint. The disguise there is so thin as to be entirely transparent; those counts are, in every respect, actions for alienation of affections or criminal conversation.[3] The other counts have a somewhat better costume but, on close examination, are prohibited nonetheless.

■ Counts I and II, as we said, charge breach of contract, the alleged contractual undertaking by the defendants being to help Daniel and Nicole solve their marital difficulties. Assuming *arguendo* that the contract itself was well pled, the problem lies in the alleged breach and the remedy sought. The breach, said Daniel, was "the affair [Nicole] was having with Derby"; the remedy sought was neither the recovery of fees paid to the defendants for their contractual services nor other traditional damages for breach of contract but damages for "injuries to [Daniel's] emotional well being, his marriage and his capacity to work." The basis of the action was the destruction of the marriage and the injuries allegedly arising from it. That is why it is barred. See *Nicholson v. Han, supra,* 162 N.W. 2d 313.

Count III suffers from that defect (see *Destafano v. Grabrian, supra,* 729 P.2d 1018) as well as the noted deficiency in articulating just what confidential communications were misused and how they were misused.

■ Counts IV and V sound in professional malpractice. Such an action may well lie against a marriage counselor who fails to exercise reasonable care in the performance of his or her calling. See Restatement (Second) of Torts § 299A. But, as with the breach of contract action, we have to examine not merely the form of the action but its

---

**3.** Count VIII, of course, suffers from the additional defect that, since 1967, a claim for loss of consortium in Maryland can be asserted only in a joint action by both husband and wife. *Deems v. Western Maryland Ry.,* 247 Md. 95, 115, 231 A.2d 514 (1967); *Gillespie–Linton v. Miles, supra,* 58 Md.App. 484, 495, 473 A.2d 947 (1984).

real basis. It is clear from the incorporation of the underlying allegations and the absence of any other articulated negligence that the sole basis of these actions was Derby's cuckolding activity. It is therefore precluded. *Destafano v. Grabrian, supra,* 729 P.2d 1018. Likewise Count VI. *Lund v. Caple, supra,* 675 P.2d 226, and *cf. Harrington v. Pages, supra,* 440 So.2d 521.

The cases cited by Daniel in support of his complaint are uniformly inapposite. Some of them were essentially malpractice actions by a seduced patient directly against her seducing therapist and did not involve an action by the patient's spouse. See *Roy v. Hartogs,* 81 Misc.2d 350, 366 N.Y.S.2d 297 (1975); *Wall v. Noble,* 705 S.W.2d 727 (Tex.Ct. App.1986); *Cotton v. Kambly,* 101 Mich.App. 537, 300 N.W. 2d 627 (1980). In *Anclote Manor Foundation v. Wilkinson, supra,* 263 So.2d 256, a hospital psychiatrist, in "acting out" his feelings, proposed marriage to his already-married patient, who eventually was discharged from the hospital, obtained a divorce from her husband, and committed suicide. The husband successfully sued for breach of contract to recover the fees he had paid the therapist for his wife's treatment, contending the defendant's inappropriate conduct destroyed the possibility of any benefit anticipated under the contract for services. No claim was made, as here, for loss of consortium or other damages for injured feelings.

For the reasons stated, we find no error in the Circuit Court judgment.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.