**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 3, 2012**

# In the Court of Appeals of Georgia

A12A0543. WITCHER v. McGAULEY et al.                    AD-025

A12A0544. McGAULEY et al. v. WITCHER.                   AD-026

ADAMS, Judge.

Jeff Witcher brought suit against Dr. David McGauley and his firm and alleged, among other things, that McGauley – the physician for Witcher, his wife, and three children – committed malpractice and breached his fiduciary duties with regard to Witcher and his care in part because McGauley was having an affair with Witcher's wife at the time. Witcher alleged that as a result of McGauley's actions, he had to seek psychiatric treatment, was divorced, lost his job, and suffered mental and physical distress, humiliation, and anguish. The trial court granted summary judgment on the medical malpractice claims, from which Witcher appeals, but denied summary

judgment on the claim of breach of a confidential relationship, from which McGauley cross appeals.[1]

Construed in favor of Witcher, the record shows the Witchers were patients of McGauley from August 2003 through 2007 and that Witcher discovered the affair near the end of May 2007. For a few weeks prior to that discovery, Witcher saw McGauley for complaints including depression and anxiety. At some point, he told McGauley that he thought "something was not clicking right at home," which was causing him to have an inability to focus on his work, yet McGauley never revealed the affair, and he continued to treat Witcher for anxiety and diagnosed him with Attention Deficit Disorder (ADD), which necessitated prescribing medication. Despite discovering the affair in May, Witcher admits he continued to see McGauley through the fall of 2007. On appeal, McGauley concedes there is an issue of fact

---

[1] On March 5, 2009, as amended on March 18, the trial court dismissed for failure to state a claim the following counts of Witcher's complaint: Count III – negligence per se; Count V – negligent infliction of emotional distress; Count VI – loss of consortium; Count VIII – harboring another man's wife, as well as a claim of respondeat superior based on these counts. On May 31, 2011, the court issued the order at issue on appeal. In that order, the trial court clearly granted summary judgment on Witcher's claims of medical malpractice (Count I) and denied summary judgment on the claim of breach of a confidential relationship (Count VII); but the court did not mention any other counts. It would appear, therefore, that the remaining counts of Witcher's complaint remain pending; we leave any issue in that regard to the trial court.

2

regarding whether he and Shelley Witcher were engaged in an affair at the relevant time. And Witcher presented factual support in the form of records of over 240 telephone calls between his wife and McGauley that occurred while McGauley treated Witcher for inability to focus on his work because of anxiety.

*A12A0543*

1. Witcher contends the trial court erred by granting summary judgment on his malpractice claim because he presented evidence sufficient to create an issue of fact regarding liability, causation, and damages. Witcher relies on his own testimony and the expert testimony of Dr. Mark Shoag and Dr. Michael Lyles, as well as, to some degree, McGauley's own expert, Dr. Robert Kaufman.[2]

(a) In his affidavit and deposition Dr. Shoag averred that to a reasonable degree of medical certainty, McGauley failed to exercise the degree of care and skill ordinarily exercised by members of the medical profession in the following ways (which we will refer to as "Shoag Allegations"):

(1) By entering into a sexual relationship with Witcher's wife while treating her as a patient;

---

[2] Even construing Kaufman's testimony in favor of the plaintiff, however, we find no admissions by Kaufman that McGauley breached the standard of care.

3

(2) By continuing to treat Witcher during the affair with Witcher's wife;

(3) By continuing to treat Witcher for depression and anxiety caused by a belief that his wife was having an affair;

(4) By failing to terminate his professional relationship with Witcher given that he was having an affair with Witcher's wife, so that Witcher could receive treatment for depression and anxiety elsewhere;

(5) By prescribing medication to Witcher for ADD in 2007 without either performing a thorough workup and properly diagnosing Witcher or referring Witcher to another doctor regarding his possible ADD; and,

(6) With regard to other professional members of his firm and to the extent they were aware of the affair, by not ensuring that McGauley ceased treating Witcher. [3]

First, any aspects of Witcher's claims that can be characterized as causes of action "for adultery, alienation of affections, or criminal conversation" are barred by

---

[3] In his deposition Shoag added two other assertions of a breach of the standard of care: (1) that in August 2003, McGauley administered two drugs that were inappropriate for Witcher; and (2) that in February 2006, McGauley improperly treated Witcher's sore throat with a shot of penicillin. But in his appellate brief, Witcher clarified that he has expressly withdrawn these two allegations of malpractice. Finally, Witcher asserts that McGauley prescribed him sleeping medication so that his wife could sneak out of the house to be with McGauley. But this allegation of professional liability is not supported by any expert evidence.

OCGA § 51-1-17, which abolished all such torts. See *Arnac v. Wright*, 163 Ga. App. 33 (292 SE2d 440) (1982). Thus, the simple fact that McGauley may have had an affair or sexual relations with Witcher's wife is not actionable, and Witcher cannot claim damages for interference with his marriage, loss of affection, or depression and anxiety that result solely from his concern that his wife was having an affair. And we agree with McGauley's argument that Witcher may not bring any action abolished by OCGA § 51-1-17 by merely renaming it as some other claim. *Arnac*, 163 Ga. App. at 34-35.

Nevertheless, that Code section did not immunize medical professionals from conduct that would otherwise constitute medical malpractice. Cf. *Doe v. Zwelling*, 620 SE2d 750 (Va. 2005) (although a substantial part of plaintiff's claimed damages against health care provider, who was subject to physicians's standard of care, arising out of affair with plaintiff's wife were barred by ban on claims of alienation of affections, some allegations stated a claim for breach of the defendant's professional standard of care); *Figueiredo-Torres v. Nickel*, 584 A2d 69 (Md App 1991) (allegations that licensed psychologist who was having affair with plaintiff's wife advised plaintiff to be distant from his wife, to avoid sexual contact with her, and to separate from her stated a cause of action for professional liability even though

5

Maryland had abolished actions for criminal conversation and alienation of affection).[4]

The court in *Nickel* relied on an earlier Maryland case that explained that the abolition of the actions of criminal conversation and alienation of affection

> does not preclude a person from maintaining a traditional breach of contract action or a recognized tort action merely because the breach arose from an improper liaison with the plaintiff's spouse or because one effect of the alleged breach or tortious conduct was a disruption or breakup of his or her marriage.

*Gasper v. Lighthouse, Inc.*, 533 A2d 1358 (1987). The court in *Gasper* then meticulously analyzed each of the plaintiff's claims to determine whether they were simply "the refitting of the abolished actions into other forms." Id. at 1360; *Zwelling*, 620 SE2d at 752 (allowing allegations that constituted "breaches of the defendant's professional standard of care that would be compensable in damages even if the plaintiff were unmarried"). We agree that the correct approach is to determine

---

[4] Two cases cited by McGauley are distinguishable in this regard because they do not involve claims of professional liability. See *Arnac v. Wright*, 163 Ga. App. 33 (292 SE2d 440) (1982) (claim for intentionally interfering with and maliciously procuring breach of husband's marriage contract); *Hyman v. Moldovan*, 166 Ga. App. 891 (305 SE2d 648) (1983) (allegation of conspiracy to alienate affections of son from father).

whether Witcher has alleged and provided support for a claim of actual medical malpractice, i.e., professional liability, under Georgia law.[5] And although *Nickel*, *Gasper*, and *Zwelling* involved claims against a psychologist, a marriage counselor, and a licensed clinical social worker, respectively, from whom the plaintiff sought marital counseling, there is a sufficient analogy here because Witcher sought at least some treatment from McGauley for depression and anxiety arising out of concern about his marriage.

In this state, doctors are liable for the failure to use a reasonable degree of care and skill:

> A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. *Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had*.

(Emphasis supplied.) OCGA § 51-1-27. A claim of professional liability has been defined as "allegations of negligence against a professional [that] involve the exercise of professional skill and judgment within the professional's area of expertise."

---

[5] McGauley's citations to two cases involving allegations of clergy malpractice are not persuasive. Both note the peculiarities of claims regarding the duties of clergy to their parishioners. See *Bladen v. First Presbyterian Church*, 857 P2d 789 (Ok. 1993); *Strock v. Pressnell*, 527 NE2d 1235 (Oh. 1988).

(Citations and punctuation omitted.) *Hamilton-King v. HNTB Georgia*, 311 Ga. App. 202, 204 (715 SE2d 476) (2011).[6] We therefore look to see whether Witcher has alleged and supported with some proper evidence any claim that McGauley failed to exercise professional skill and judgment in providing Witcher medical care, as well as evidence that any such failure caused Witcher injury. Cf. *Tante v. Herring*, 264 Ga. 694, 695 (1) (453 SE2d 686) (1994) (in a claim of professional liability, plaintiff must allege breach in performance of professional services). The fact that McGauley may have engaged in an affair with Witcher's wife is only relevant in this context.

(i) Turning to Shoag's allegations of professional malpractice, it is easy to see that Shoag Allegations No. (1) and (2) above fail to allege any error of professional skill or judgment with regard to Witcher's care, and therefore summary judgment was

---

[6] With regard to statutes of limitation, OCGA § 9-3-70 defines an "action for medical malpractice" as follows:

[A]ny claim for damages resulting from the death of or injury to any person arising out of:

(1) Health, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person; . . .

8

properly granted on those claims. Neither claim purports to show that McGauley rendered medical care to Witcher in a substandard manner.

(ii) When read together, Shoag Allegations No. (3) and (4) claim that McGauley treated Witcher for depression and anxiety without revealing the affair or without terminating the professional relationship so that Witcher could receive proper care elsewhere. During his deposition, Shoag clarified that he was "not positive that [McGauley] needed to disclose that relationship [to] Mr. Witcher as much as he needed to terminate his relationship with Mr. Witcher." Witcher cites no other expert opinion in support. Therefore, Shoag Allegation (3) fails for lack of a supporting expert opinion.

With regard to Shoag Allegation (4), and pretermitting consideration of a breach of duty, Shoag averred that McGauley's failure to terminate the professional relationship "caused injuries and damages to Jeff Witcher, including increased depression and [anxiety][7] and otherwise unnecessary medical and psychological treatment and medication." During his deposition, he clarified that the depression and anxiety resulted from Witcher believing that his wife was having an affair; he further clarified that by "increased" depression and anxiety, he meant over and above "any

_____

[7] In his deposition he clarified that he meant anxiety instead of paranoia.

preexisting depression he may have." And Shoag explained that Witcher's injuries included "medical and psychological treatment and medication" that resulted because the physician/patient relationship was never terminated, as well as whatever additional treatment was required to treat the depression and anxiety resulting from the suspected affair. But Shoag never opined that had McGauley terminated his professional relationship with Witcher during the affair, Witcher's anxiety and depression would be reduced or alleviated or that treatment elsewhere for the same anxiety and depression would have improved his condition. Finally, Witcher admits he continued to see McGauley for months after discovering the affair.

After careful review, and construing Shoag's opinion and the other evidence in favor of Witcher we conclude that in Shoag Allegation (4), Witcher has only raised claims whose damages are the depression and anxiety associated with concern about his wife having an affair, as well as psychological and medical treatment arising from the same. Thus, Shoag Allegation (4) only raises claims abolished by OCGA § 51-1-17. He has not supported with proper evidence a claim for damages arising out of a breach of any duty regarding Witcher's medical care.

(iii) Shoag Allegation No. 5 – that McGauley prescribed medication to Witcher for ADD in 2007 without either performing a thorough workup and properly

10

diagnosing Witcher or without referring Witcher to another doctor – stands as a valid allegation of breach of a medical duty. But Shoag conceded that he did not know whether Witcher, in fact, had ADD; he did not know whether Witcher had a reaction to the medication McGauley allegedly inappropriately prescribed; and he could not say whether the medications were the cause of any subsequent conditions that Witcher displayed. And Witcher testified that no other physician that he had seen since McGauley disagreed with McGauley's diagnosis. Accordingly, we conclude that Witcher has failed to show any possible harm arising from this allegation of professional malpractice, and therefore the claim must fail. See *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003); *Webster v. Desai*, 305 Ga. App. 234, 238 (2) (699 SE2d 419) (2010).

(iv) In Shoag Allegation No. 6, Witcher alleges that professional members of McGauley's firm, to the extent they were aware of the affair, breached the standard of care by not ensuring that McGauley ceased treating Witcher. But he has presented no evidence to raise an issue of fact regarding whether any professional members of the firm had that knowledge. Furthermore, Witcher has not supported this allegation with any argument, citations to the record, or citations of law, and, therefore, the allegation is abandoned. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of

11

error which is not supported in the brief by citation of authority or argument may be deemed abandoned.").

(b) Witcher also relies on Lyles, a medical doctor certified in the field of psychiatry, who diagnosed Witcher in September 2007 as having depression and Post Traumatic Stress Disorder. In his two-page affidavit, however, Lyles did not make a single allegation regarding McGauley's treatment of Witcher, and he averred that Witcher's maladies "resulted from his concern that he would lose his wife, would lose his job . . . and would lose his reputation," which are all claims barred by OCGA § 51-1-17, as shown above. Finally, there is no link between Lyles's opinion and Shoag's opinion. Thus, Lyles's affidavit provides no support whatsoever for a claim of medical malpractice against McGauley.

In summary, we conclude that for all assertions of professional liability, the trial court's order is affirmed.

*A12A0544*

2. In the cross-appeal, McGauley contends the trial court erred by refusing to grant summary judgment on Witcher's claim of breach of fiduciary duty/confidential

12

relationship, arguing that because the claim arose out of the affair it is nothing more that a renamed claim of the torts banned by OCGA § 51-1-17.[8]

We disagree with McGauley's simple reasoning. As stated above, we agree that a claim of alienation of affections or criminal conversation may not be asserted by simply renaming it. But we do not agree that a doctor is incapable of breaching a fiduciary duty to a patient while having an affair with that patient's wife. Cf. *Zwelling*, 620 SE2d 750 (allegation that health care provider disclosed to the patient's wife, with whom health provider was having an unprofessional relationship, intimate details that plaintiff/patient had disclosed to the health care provider in confidence was sufficient to allege a breach of professional standard of care). Therefore, we will carefully examine the allegations and factual support to determine whether Witcher has alleged and supported a claim of breach of fiduciary duty under Georgia law.

Witcher has characterized this claim in several ways. In his complaint, Witcher alleged that "[t]he Defendants breached and violated the fiduciary relation by having an illicit sexual and emotional relationship with the Plaintiff's wife." In his deposition, Witcher averred that McGauley breached a fiduciary duty by having an

---

[8] Witcher has made clear that his claim of breach of a confidential relationship is a claim regarding his relationship with McGauley, his doctor; it does not involve the physician/patient relationship between his wife and McGauley.

affair with his wife and not telling him. In his appellate brief, Witcher argues that McGauley breached his duty by having an affair with his wife, by failing to terminate his physician/patient relationship with Witcher while having the affair, and by prescribing him sleeping pills during the affair. But we find no allegation or assertion of fact to the effect that McGauley ever disclosed confidential information acquired from Witcher to his wife or any third party.

First, as already explained, the assertion of a breach of duty by having a sexual and emotional relationship is barred by OCGA § 51-1-17. Second, the assertion of a breach of duty by failing to inform Witcher of the affair or failure to terminate the professional relationship is properly characterized as a claim of professional negligence, which has already been addressed in Division 1. See *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 671 (2) (639 SE2d 610) (2006) (claim of breach of fiduciary duty for failing to inform patient about her condition stated a claim for medical malpractice); *Oliver v. Sutton*, 246 Ga. App. 436, 438 (540 SE2d 645) (2000) (failing to communicate proper diagnosis can breach professional standard of care). In fact most of Witcher's brief simply reiterates his assertions of a breach of a professional duty of care. Witcher's additional claim that McGauley improperly prescribed sleeping pills to Witcher is also a claim of professional liability, but it is

14

not supported by expert testimony and therefore fails. Next, McGauley had no duty to disclose to his patient personal life factors, such as an affair, that might adversely affect his professional performance. See *Albany Urology Clinic, P.C. v. Cleveland*, 272 Ga. 296, 299-300 (528 SE2d 777) (2000) (no duty to disclose illicit drug use). Although evidence of such a factor may be relevant to a claim that the physician rendered deficient professional services, see id., Witcher's claims in this regard are flawed as shown in Division 1. Finally, we find no allegation that McGauley disclosed Witcher's confidential information or breached a confidence in any other way; nor does Witcher offer any such facts in his brief. See *Tante v. Herring*, 264 Ga. at 695 (1) (professional has fiduciary duty with regard to the confidential information).[9] "The defendants' summary judgment motion was properly supported, so [Witcher] was required to come forward with some evidence showing, or supporting reasonable inferences of, a genuine issue of material fact." *Deen v. Stevens*, 287 Ga. 597, 611 (3) (698 SE2d 321) (2010). This he has not done.

---

[9] In *Tante*, the lawyer breached his fiduciary duty to his client by taking advantage of her confidential information to engage in an affair with her. The Court did not describe why the client's husband was entitled to recover, perhaps as a loss of consortium derivative claim, but it did not state that he had a direct claim.

15

The case of *Brewer v. Paulk*, 296 Ga. App. 26 (673 SE2d 545) (2009), is not on point because the husband in that case only brought a derivative claim – loss of consortium – arising out of *his wife's* claim of breach of fiduciary duty against a priest for engaging in a sexual relationship with her.

In sum, we find no support for a separate claim of breach of a confidential or fiduciary duty. We therefore reverse the trial court's denial of summary judgment on that claim and remand for entry of judgment consistent with this opinion.

*Judgment affirmed in Case No. A12A0543. Judgment reversed and case remanded with direction in Case No. A12A0544. Barnes, P. J., and McFadden, J., concur.*