584 A.2d 69

Silvio **FIGUEIREDO–TORRES**

v.

**Herbert J. NICKEL.**

**No. 16, Sept. Term, 1990.**

Court of Appeals of Maryland.

Jan. 21, 1991.

Thomas J. Sippel (John G. Gill, Jr., Gill & Sippel; Damon Bernstein, Kupferberg & Bernstein, on brief), Rockville, for appellant.

Paul F. Newhouse (Jeri Lynn Balenson, Eccleston & Wolf, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE,* RODOWSKY and CHASANOW, JJ.

CHASANOW, Judge.

Appellant Silvio Figueiredo–Torres (Torres) filed a complaint on March 2, 1989, in the Circuit Court for Montgom-

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

ery County, against Appellee Herbert J. Nickel (Nickel) seeking damages for negligence, gross negligence, intentional infliction of emotional distress and "outrage." The complaint alleged the following facts: In July 1985, Torres and his wife sought the counsel of Nickel, a licensed psychologist, for the purpose of preserving and improving their marital relationship. Most of the therapy sessions with Nickel were joint sessions attended by both Torres and his wife; however, Torres also attended some individual sessions with Nickel. Apparently, Nickel conducted individual sessions with Mrs. Torres as well, for the complaint maintains that, during the course of Nickel's treatment of Torres and his wife, Nickel commenced a romantic relationship with Mrs. Torres, engaging in "improper affectionate conduct" and "repeated sexual intercourse" with her, which culminated in the dissolution of the Torres' marriage. In therapy sessions with Torres, Nickel "consistently advised [him] to be distant from his wife, not to engage in intimate and/or sexual contact with her, and ultimately to separate from her." The complaint further alleged that, as a result of his psychologist-patient relationship with Torres, Nickel knew that Torres was particularly sensitive emotionally. Torres also set forth numerous injuries, both emotional and physical, and damages allegedly sustained as a result of Nickel's conduct.

Nickel filed a Maryland Rule 2–322(b)(2) motion to dismiss the complaint for failure to state a claim upon which relief can be granted, relying on *Gasper v. Lighthouse, Inc.*, 73 Md.App. 367, 533 A.2d 1358 (1987), *cert. denied*, 311 Md. 718, 537 A.2d 272 (1988). The motion was granted by the circuit court as to the gross negligence, intentional infliction of emotional distress, and "outrage" counts; the negligence count was dismissed with leave to amend. Torres then filed an amended complaint for professional negligence.

In his amended complaint, Torres set forth eleven constituents of the standard of care allegedly owed by Nickel to Torres as a result of their psychologist-patient relationship, as well as eleven ways in which Torres asserted that Nickel

breached that standard of care. Torres further averred that Nickel's actions were motivated by "hate, spite, recklessness, malice" and were "done deliberately to injure and cause damage to [Torres]." Torres also enumerated physical and emotional damages allegedly caused by Nickel's professional negligence.

The circuit court dismissed the amended complaint, and Torres appealed to the Court of Special Appeals challenging the dismissal of the professional negligence and intentional infliction of emotional distress counts. We issued a writ of certiorari before the intermediate court ruled on the case.

The standard for review of Rule 2–322 motions was stated in *Sharrow v. State Farm Mutual,* 306 Md. 754, 768–69, 511 A.2d 492, 499–500 (1986):

"[I]n considering the legal sufficiency of [a] complaint to allege a cause of action ..., we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings. On the other hand, any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." (Citations omitted.)

*Id. Accord Smith v. Gross,* 319 Md. 138, 141–42, 571 A.2d 1219, 1220 (1990). We further recognized that "[t]here is, of course, a big difference between that which is necessary to prove the commission of the tort and that which is necessary merely to allege its commission." *Sharrow,* 306 Md. at 770, 511 A.2d at 500. In the instant case we do not pass on the merits of Torres' actions for professional negligence or intentional infliction of emotional distress; we merely determine his right to bring these actions.

## I. PROFESSIONAL NEGLIGENCE

We address first the issue of whether Torres' complaint and amended complaint (hereinafter collectively referred to as complaint) allege facts that are sufficient, if proven, to support a cause of action for professional negligence. As Nickel admits in his brief,

"It is a fundamental rule that negligence exists only where there is a duty owed by one person to another and a breach of that duty occurs, causing injury. In the instant case, as a psychologist, [Nickel] owed a duty of care to his clients to maintain their confidentiality and to act within the standard of care, *i.e.*, to act as a reasonably competent psychologist in a similar situation would act." (Citations omitted.)

Nickel does not deny that a psychologist-patient relationship existed between himself and Torres; nor does he deny that he owed Torres a duty to observe the standard of care that a reasonably competent psychologist would exercise. He argues that he should be excused from liability for engaging in sexual intercourse with Torres' wife and for counseling Torres to be distant from her because those activities constitute either "criminal conversation" or "alienation of affections," and both of those causes of action have been abolished in Maryland.

An action for alienation of affections "arose when a person induced a married woman to leave her husband or otherwise interfered with the marital relationship, even though no act of adultery was committed." *Kline v. Ansell*, 287 Md. 585, 590, 414 A.2d 929, 932 (1980). It was abolished by the Maryland Legislature in 1945 because "[t]he Legislature found that the action had been 'subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances....'" *Gasper*, 73 Md. App. at 370, 533 A.2d at 1359 (quoting Chapter 1010 of the Laws of 1945). Criminal conversation is the act of engaging in sexual intercourse with the wife of another. The cause of action for criminal conversation was abolished by this Court in 1980 in *Kline*. While we noted in *Kline* that this cause of action was anachronistic and "incompatible with today's sense of fairness," 287 Md. at 589, 414 A.2d at 931, we held that it was unconstitutional because it conflicted with the Maryland Equal Rights Amendment. *Id.* at

593, 414 A.2d at 933; *see also* Note, *Judicial Abrogation of the Civil Action for Adultery*, 10 U.Balt.L.Rev. 205 (1980). Assuming, as we must, the truth of the allegations of the complaint in this case, it appears that Nickel engaged in both of these activities. Based on *Gasper*, Nickel argues that Torres' complaint is merely a "refitting of the abolished actions into other forms."

Neither party contends that *Gasper* was incorrectly decided, so we need not address that issue. *Gasper* involved a suit by a husband against a marriage counselor who, in the course of counseling husband and wife, commenced an affair with the wife. The Court of Special Appeals held that the complaint was properly dismissed because it relied " 'as a substantial cause of action on alienation of affection and criminal conversation....' " 73 Md.App. at 372, 533 A.2d at 1360. Nickel's reasoning, that *Gasper* precludes a cause of action for professional negligence where the negligence consists of engaging in sexual intercourse with his patient's wife, may be flawed. The Court of Special Appeals addressed this very issue when it declared:

"As a preface to our consideration of the issue raised, we wish to make clear that abolition of the actions for alienation of affections and criminal conversation *does not preclude a person from maintaining* a traditional breach of contract action or *a recognized tort action merely because the breach arose from an improper liaison with the plaintiff's spouse or because one effect of the alleged breach or tortious conduct was a disruption or breakup of his or her marriage."* (Emphasis added.)

*Id.*

■ Torres' complaint alleges that Nickel, a licensed psychologist "who held himself out as having expertise in the field of marriage-counseling, individual and family therapy, and as having the ability to provide psychotherapy that would aid couples in preserving and enriching their marriages," undertook to counsel Torres, both individually and jointly with his wife, for the purpose of bettering Torres'

"own mental and emotional health and to better the marital relationship." The complaint avers that the therapy sessions were "designed to help and resolve marital problems and conflicts which the couple had been experiencing, and to treat them both from a psychological point of view so that their marriage would be preserved, enriched and fulfilled." These allegations are sufficient to show that a psychologist-patient relationship arose between Torres and Nickel such that Nickel owed Torres a duty to exercise "that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances." *Shilkret v. Annapolis Emergency Hosp.*, 276 Md. 187, 200, 349 A.2d 245, 253 (1975); *see also Horak v. Biris*, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 603, 474 N.E.2d 13, 17 (1985) (the nature of the therapist-patient relationship "gives rise to a clear duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being, and to refrain from any activity or conduct which carries with it a foreseeable and unreasonable risk of mental or emotional harm to the patient").

We do not agree with Nickel's contention that the affair was his private concern wholly separate from his professional practice. The trier of fact may find it was professional malpractice for a psychologist engaged in marriage counseling to maintain a sexual relationship with his patient's spouse. *See Mazza v. Huffaker*, 61 N.C.App. 170, 300 S.E.2d 833, 838, *petition for discretionary review denied*, 309 N.C. 192, 305 S.E.2d 734 (1983). We doubt that the standard of care exercised by a reasonable psychologist permits the practitioner to treat a patient in the confines of the office and then undermine that treatment outside the therapy session. In *Mazza,* a case factually similar to the one at bar, "expert testimony tended to establish an obligation on the part of psychiatrists, as a part of their duties within the patient-psychiatrist relationship, to conduct themselves in a certain way and this obligation applies even

beyond the office, clinic, hospital, or laboratory." *Id.* At trial, Torres should be given the opportunity to establish likewise that a psychologist's duty to his patient does not stop at the office door. *See also Rowe v. Bennett*, 514 A.2d 802, 804 (Me.1986) (it was a psychiatrist's opinion that a social worker breached her professional duty to her psychotherapy patient by seeing the patient's companion socially while treating the patient for problems with her relationship with that companion).

On the surface, the allegations of improper sexual conduct set forth in Torres' complaint may constitute criminal conversation; however, if in addition, the sexual activity violated the professional standard of care which Nickel owed to Torres, it is sufficient to support a cause of action for professional negligence.

Torres further avers in his complaint that Nickel advised him "to be distant from his wife, not to engage in intimate and/or sexual contact with her, and ultimately to separate from her." These assertions resemble the abolished cause of action for alienation of affections. We believe that they may also sustain the allegation that Nickel breached his professional duty of care. We caution, however, that we do not espouse the notion that a psychologist who, acting in the best interest of his or her patient and using proper professional standards, advises the patient to separate from his or her spouse may be liable for professional negligence. In this case, the complaint clearly avers that Nickel acted for his own self-gratification and not in the interest of his patient.

Torres' complaint raises an additional means, separate from the allegations which overlap amatory claims, by which Nickel may have breached the standard of care owed to his patient. Torres maintains that Nickel demoralized him and engaged in conduct destructive to his ego development and self-respect in violation of the duty Nickel owed to his psychotherapy patient.

Torres, of course, has the burden to prove by expert testimony at trial that these activities violated the requisite

standard of care. We believe, however, that the allegations of the complaint are sufficient to survive a Rule 2–322(b) motion.

In making a claim for professional negligence, Torres must also allege damages which were proximately caused by Nickel's negligent treatment. The complaint alleges that Torres suffered "[a]djustment disorder with depressed mood, mixed personality disorder, and increased blood pressure, requiring hospitalization," "systemic hypertension, and a loss of visual acuity in his left eye, requiring treatment," and other injuries and damages as a result of Nickel's negligence. Nickel argues that it is impossible to determine whether Torres' damages were proximately caused by Nickel's breach of his professional duty or whether they were caused by the break-up of his marriage which was not the result of Nickel's breach of professional duty. Similarly, he argues that it is impossible to determine the amount of damages attributable to the alleged malpractice. We recognize that the two injuries are closely intertwined; but the mere fact that it may be difficult for a jury to differentiate in this case between Torres' damages resulting from the professional negligence of Nickel and the damages he suffered as a result of the dissolution of his marriage does not foreclose his right of action. Our system of jurisprudence often requires juries to deal with difficult issues. It is the task of the trial judge to guide them in the law so that they may evaluate the facts and apply appropriate legal standards.

Taking the allegations of the complaint as true and drawing all inferences in favor of Torres, we believe the complaint sufficiently raises the tort of professional negligence and that Torres is entitled to bring his suit. We turn now to the issue of intentional infliction of emotional distress.

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

We recognized the tort of intentional infliction of emotional distress in *Harris v. Jones*, 281 Md. 560, 380 A.2d 611

(1977). In that case, we set forth four elements essential to establish that cause of action:

"(1) The conduct must be intentional or reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress;

(4) The emotional distress must be severe."

*Id.* at 566, 380 A.2d at 614. We emphasized that close adherence to these four elements would assure that "two problems which are inherent in recognizing a tort of this character can be minimized: (1) distinguishing the true from the false claim, and (2) distinguishing the trifling annoyance from the serious wrong." *Id.* These inherent problems are of no less concern to us today; and we acknowledge the view expressed by Judge Bloom in *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 61, 502 A.2d 1057, 1065, *cert. denied*, 306 Md. 118, 507 A.2d 631 (1986), that "[i]n developing the tort of intentional infliction of emotional distress, whatever the relationship between the parties, recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves." With these qualifications firmly in mind, we consider Nickel's argument that Torres' complaint has not sufficiently plead the elements of extreme and outrageous conduct and severe emotional distress.

Torres avers that Nickel was a psychologist engaged to treat him for the purpose of bettering his mental and emotional health and to assist in resolving marital problems he was having with his wife. Despite the goals of this therapy and Nickel's knowledge that Torres was "particularly susceptible to emotional upset, anxiety and distress," Torres maintains that Nickel "developed a romantic relationship with [Torres'] wife, ... and engaged in improper affectionate conduct and repeated sexual intercourse with her." Nickel contends that, because Torres' wife was a consenting adult and sexual relations between consenting adults in modern society is not extreme and outrageous

conduct, the intentional infliction of emotional distress count was properly dismissed. Nickel's analysis neglects one important detail. Nickel was not "the milkman, the mailman, or the guy next door" [1]; he was Torres' psychologist and marriage counselor.

As we recognized in *Harris*, "the extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person, which gives him actual or apparent authority over him, or power to affect his interests." 281 Md. at 569, 380 A.2d at 616 (citing *Restatement (Second) of Torts* § 46 comment e (1965)). Furthermore, "[i]n cases where the defendant is in a peculiar position to harass the plaintiff, and cause emotional distress, his conduct will be carefully scrutinized by the courts." 281 Md. at 569, 380 A.2d at 615 (citing 1 F. Harper & F. James, Jr., *The Law of Torts* § 9.1 at 666–67 (1956); W. Prosser, *Handbook of the Law of Torts* § 12 at 56 (4th ed. 1971)). A psychologist-patient relationship, by its nature, focuses on the psyche of the patient; and a psychologist is in a unique position to influence the patient's emotional well-being. For this reason, a psychologist-patient relationship falls squarely into the category of relationships which are carefully scrutinized by the courts. That is not to say that any patient who is unhappy with the results of psychotherapy has a cause of action against the therapist for intentional infliction of emotional distress; however, a jury may find extreme and outrageous conduct where a psychologist who is retained to improve a marital relationship implements a course of extreme conduct which is injurious to the patient and designed to facilitate a romantic, sexual relationship between the therapist and the patient's spouse.

---

1. We borrow a phrase coined by Judge Cacioppo of the Ohio Court of Appeals and quoted from an unreported opinion in *Strock v. Pressnell*, 38 Ohio St.3d 207, 527 N.E.2d 1235, 1246 (1988) (Sweeney, J., dissenting).

■ In addition to the allegations of sexual misconduct, Torres further alleges that, despite his knowledge that Torres "was particularly susceptible to emotional upset, anxiety and distress" and "emotionally and mentally unstable," Nickel "demoralized [Torres] by making statements, and engaging in conduct that was destructive to [Torres'] ego development and self-respect," and "caused further and greater feelings of helplessness, discouragement, shame, guilt, fear and confusion by telling him he was a 'codfish' and that his wife deserved a 'fillet'; by telling him he had bad breath and should not go near his wife, and by falsely and systematically telling [Torres] that the deterioration of [Torres'] relationship with his wife was exclusively the result of [Torres'] conduct." As we stated in *Harris*, " 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' " are insufficient to support a claim for intentional infliction of emotional distress, *Harris*, 281 Md. at 567, 380 A.2d at 614 (quoting *Restatement (Second) of Torts* § 46 comment d). Nevertheless, we repeat our conviction that "[i]n determining whether conduct is extreme and outrageous, it should not be considered in a sterile setting, detached from the surroundings in which it occurred." *Id.* at 568, 380 A.2d at 615 (citing *Pakos v. Clark*, 253 Or. 113, 453 P.2d 682 (1969)). Coming from a stranger, or even a friend, this conduct may not be outrageous; but we are not prepared to state as a matter of law that such behavior by a psychologist which takes advantage of the patient's known emotional problems is not extreme and outrageous conduct sufficient to support an intentional infliction of emotional distress claim.

■ As to the question of severity, Nickel argues that Torres "has not alleged that he has been unable to attend to his daily activities or that no person would be expected to endure such a situation." That degree of severity was found in *Moniodis v. Cook*, 64 Md.App. 1, 494 A.2d 212, *cert. denied*, 304 Md. 631, 500 A.2d 649 (1985), where the Court of Special Appeals upheld a verdict for intentional infliction of emotional distress. This Court has

since discussed the degree of severity of emotional distress required to sustain a claim for intentional infliction of emotional distress in *B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988), a case posing the certified question "Does Maryland Recognize A Cause of Action for ... Intentional Infliction of Emotional Distress, ... Resulting From the Sexual Transmission Of A Dangerous, Contagious, and Incurable Disease, Such As Genital Herpes?" We stated,

> "We do not believe, however, that a showing like that in *Moniodis* is essential to recovery. While the emotional distress must be severe, it need not produce total emotional or physical disablement.... And severity must be measured in light of the outrageousness of the conduct and the other elements of the tort." (Citations omitted.)

*Id.* at 148, 538 A.2d at 1181–82 (quoting *Reagan v. Rider*, 70 Md.App. 503, 513, 521 A.2d 1246, 1251 (1987)).

> The complaint in this case alleges that Torres suffered "systemic hypertension and loss of visual acuity in his left eye, required hospitalization for severe emotional distress, shock and fright to his nervous system; he suffered depression, anxiety, obsession ... and impairment of his ability to form intimate relationships with women, all said injuries requiring psychological therapy and counseling; he lost the benefit received from prior psychological counseling...."

While we are mindful that Torres must prove both that he suffered severe injury and that the injury was proximately caused by Nickel's tortious conduct, we believe that the complaint is sufficient to survive a Rule 2–322(b) motion.

Nickel also argues, as he did with regard to the professional negligence claim, that Torres' claim for intentional infliction of emotional distress alleges nothing more than criminal conversation and/or alienation of affections. The Court of Appeals of Oregon was confronted with this question in *Spiess v. Johnson*, 89 Or.App. 289, 748 P.2d 1020, *aff'd en banc by an equally divided court*, 307 Or. 242, 765 P.2d 811 (1988). *Spiess* involved the dismissal of

an amended complaint of a husband against a psychiatrist who, while treating the wife in an effort to preserve the marriage, engaged in a sexual relationship with her. In response to the question whether the intentional infliction of emotional distress was actually a claim for criminal conversation and alienation of affections, the court stated:

"[C]riminal conversation consists of sexual intercourse with the spouse of another person, and the elements of alienation of affection are wrongful conduct of the defendant which is intended to cause and which actually does cause the plaintiff *the loss of the affection and consortium of the plaintiff's spouse.* The gravamen of the tort of intentional infliction of severe emotional distress, on the other hand, is that the plaintiff has suffered *a loss due to intentionally inflicted severe emotional distress.* It is the nature of *the loss* allegedly suffered by plaintiff in this case that distinguishes his claim of intentional infliction of severe emotional distress from the torts of alienation of affections and criminal conversation. He claims to have suffered severe emotional distress as a result of Johnson's alleged intentional conduct; his claimed loss is *not* the loss of his wife's society and companionship. That Johnson allegedly used his sexual relationship with plaintiff's wife as *the means* to intentionally inflict severe emotional distress on plaintiff does not transform plaintiff's claim into one for either alienation of affections or criminal conversation. Furthermore, we cannot say, as a matter of law, that Johnson's alleged conduct did not exceed the bounds of socially tolerable conduct." (Citations omitted, emphasis in original.)

*Id.* at 1023–24.

The gravamen of Torres' claim for intentional infliction of emotional distress is not merely the sexual act or the alienation of his wife's affections. It is the entire course of conduct engaged in by his therapist, with whom he enjoyed a special relationship. This conduct constitutes more than the abolished amatory causes of action. On the record

before us, we hold that Torres' claims for professional negligence and intentional infliction of emotional distress should not have been dismissed by the trial court.

JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE ORDER DISMISSING COUNT III OF THE COMPLAINT AND COUNT I OF THE AMENDED COMPLAINT AND SCHEDULE THE CASE FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY THE APPELLEE.