727 A.2d 388

**Dale BORCHERS**

**v.**

**Ronald HRYCHUK, et al.**

**No. 821, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 7, 1999.

Robert N. Levin (Levin & Tepper, on the brief), Bethesda, for appellant.

Deborah M. Whelihan (David B. Stratton and Jordan, Coyne & Savits, LLP, on the brief), Washington, DC, for Hyrchuk.

Lauri E. Cleary (Stanley J. Reed, J. Bradford McCulloch and Lerch, Early & Brewer, Chartered, on the brief), Bethesda, for Potomac Conference of Seventh-Day Adventists.

Argued before EYLER, KENNEY, and PAUL E. ALPERT (Ret., specially assigned), JJ.

PAUL E. ALPERT, Judge (Ret., specially assigned).

Appellant, Dale Borchers, sued appellees, Ronald Hyrchuk and Potomac Conference of the Seventh–Day Adventist Church ("Potomac Conference"), in the Circuit Court for Montgomery County for marital counseling malpractice, clergy malpractice, gross negligence, negligent hiring, intentional infliction of emotional distress, and breach of contract.[1] Potomac Conference moved to dismiss the counts against it on the ground that they failed to state claims upon which relief could be granted. The circuit court granted the motion in part— dismissing the marital counseling malpractice and negligent hiring claims without prejudice, and dismissing all of the other claims with prejudice. Borchers then filed an amended complaint against both Hyrchuk and Potomac Conference which asserted a single claim for marital counseling malpractice. Potomac Conference moved to dismiss the amended complaint for failure to state a claim, and Hyrchuk moved for summary judgment on the amended complaint. The circuit court granted those motions, and this appeal followed.

## ISSUES

Potomac Conference raises a threshold issue, which we rephrase:

---

1. The negligent hiring claim was asserted against Potomac Conference only. All other claims were asserted against both appellees.

I. Whether Borchers abandoned the claims in her initial complaint, other than the one for marital counseling malpractice, when she filed her amended complaint?

Borchers, in turn, raises five issues, which we rephrase:

II. Whether the circuit court erred when it dismissed her claim for intentional infliction of emotional distress?

III. Whether the circuit court erred when it dismissed her marital counseling malpractice claim?

IV. Whether the circuit court erred when it dismissed her clergy malpractice claim?

V. Whether the circuit court erred when it dismissed her gross negligence claim?

VI. Whether the circuit court erred when it found that there was no vicarious liability on the part of Potomac Conference?

## FACTS

This case arises out of a sexual relationship that occurred in the summer of 1994 between Borchers, who was then an employee at a camp operated by Potomac Conference, and Hyrchuk, who was a pastor at that camp. Borchers claims that she was having marital difficulties at the time, and that when she sought advice from Hyrchuk, he exploited his position to initiate a sexual relationship with her.

Additional facts will be presented in the discussion of the issues.

## DISCUSSION

### I. Abandonment

Potomac Conference argues that when Borchers filed her amended complaint, which stated only a cause of action for marital counseling malpractice and did not refer back to the initial complaint, she abandoned all of the claims in her initial complaint, other than the one for marital counseling malpractice. The problem with this assertion is that when the circuit

court granted Potomac Conference's motion to dismiss the first complaint, it did so with prejudice for all but two of the counts in that complaint; the only claims in the initial complaint for which Borchers was given leave to amend were the ones for marital counseling malpractice and negligent hiring. In a situation like this, only those claims for which leave to amend was granted should be restated in an amended complaint; the failure to assert in the amended complaint the claims that were dismissed with prejudice does not constitute a waiver or abandonment of those claims on appeal. *See Thomas v. Ford Motor Credit Company,* 48 Md.App. 617, 628, 429 A.2d 277 (1981) (Where, following grant of demurrer to all but one count of first declaration, buyer filed amended declaration reiterating allegations of count in first declaration to which demurrer was overruled, without any reference to previous declaration, plaintiff withdrew only remaining count of previous declaration). Accordingly, by filing her amended complaint, Borchers only waived the negligent hiring claim,[2] the dismissal of which she does not contest in this appeal; but she clearly did not abandon the other claims asserted in her initial complaint.

## II. Intentional Infliction of Emotional Distress

Borchers argues that the circuit court erred when it dismissed her intentional infliction of emotional distress count on the ground that it failed to state a claim upon which relief could be granted. We disagree.

In reviewing a grant of a motion to dismiss for failure to state a claim, "we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings[,]" and then determine the legal sufficiency of those allegations. *Figueiredo–Torres v. Nickel,* 321 Md. 642, 647, 584 A.2d 69 (1991)

---

2. Again, in its dismissal of Borchers's initial complaint, the circuit court only granted her leave to amend the claims for marital counseling malpractice and negligent hiring. Thus, her failure to assert the negligent hiring claim in the second complaint without any reference to the initial complaint constituted a waiver of that claim.

(quoting *Sharrow v. State Farm Mutual Automobile Insurance Company*, 306 Md. 754, 768, 511 A.2d 492 (1986)). In our performance of this review, "any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Id.*

With respect to the tort of intentional infliction of emotional distress, Borchers alleged the following:

5. Mrs. Borchers and her husband are lifetime members of the Seventh–Day Adventist Church. Mrs. Borchers worked at a summer day camp operated by Sligo Church during the summer of 1994. She had worked at the camp for several summers before that.

6. During the summer of 1994, Pastor Hyrchuk was employed as the Director of the summer camp and was Mrs. Borchers' supervisor.

7. At all times relevant hereto, Pastor Hyrchuk was employed as a Pastor of Defendant Sligo Church and acted under its supervision but he was officially an employee of the Potomac Conference and his pay check came from that entity which also had supervisory powers over his activities.

8. Mrs. Borchers and her husband were experiencing marital difficulties during the summer of 1994. In or about July of 1994, Mrs. Borchers approached Pastor Hyrchuk for counseling in regard to her marital situation.

9. Rather than ministering to Mrs. Borchers' emotional and spiritual needs or providing proper marital counseling, Pastor Hyrchuk undertook a campaign of seduction of Mrs. Borchers taking advantage of her vulnerability and her trust in him and the Seventh–Day Adventist Church that he represented. Rather than advising her on how she might improve her marriage, Pastor Hyrchuk introduced her to a novel, "Bridges of Madison County" in which a married woman enters into a poetically portrayed sexual relationship with another man to the—fictional—benefit of all parties concerned and persuaded her that they should emulate the conduct so portrayed. Being emotionally distraught and

depressed, Mrs. Borchers succumbed to Pastor Hyrchuk's campaign.

10. In late July and early August of 1994, Pastor Hyrchuk's invidious campaign succeeded and he had sexual intercourse with Mrs. Borchers on two occasions, once in a meeting room at the Sligo church.

11. At all times relevant hereto Pastor Hyrchuk knew of and used Mrs. Borchers emotional vulnerability and confidential information that she entrusted to him to take advantage of her.

12. The misconduct of Pastor Hyrchuk knew of and used Mrs. Borchers [sic] emotional vulnerability and confidential information that she entrusted to him to take advantage of her.

13. At all times relevant hereto Pastor Hyrchuk was acting within the scope of his employment as an employee of the Church Defendants and they are vicariously liable for his actions.

14. On information and belief, the church Defendants were aware of Pastor Hyrchuk's proclivities for sexual misconduct and they were negligent in retaining him in the sensitive and powerful positions in which they placed him.

\* \* \*

40. Plaintiff realleges all of the foregoing and incorporates the same by reference.

41. Pastor Hyrchuk's conduct was intentional or reckless in that, among other things, he knew of Mrs. Borchers [sic] previous emotional state and the almost certain adverse outcome to her of the seduction that he pursued.

42. Pastor Hyrchuk's conduct was extreme and outrageous and violated all standards of civilized conduct expected of a counselor and a clergyman in whom persons in Mrs. Borchers' emotionally vulnerable position had a right to place confidence.

43. The outrageous conduct of Pastor Hyrchuk was causally related to the emotional distress experienced by Mrs. Borchers.

44. The emotional distress that she experienced, which has been diagnosed to include post-traumatic stress disorder, is severe, long lasting and extremely damaging to her and her family.

To sustain a claim for intentional infliction of emotional distress, a plaintiff must establish that: 1) the defendant's conduct was intentional or reckless; 2) his conduct was extreme and outrageous; 3) there was a causal connection between the defendant's wrongful conduct and the emotional distress suffered; and 4) the emotional distress was severe. *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611 (1977). In this case, there is no question that the allegations of the complaint satisfy the requirements of intentional conduct, a causal connection, and severe emotional distress. The only question is whether Hyrchuk's alleged conduct—having sex with Borchers after she approached him for help with her marital problems—was extreme and outrageous.

In determining whether Hyrchuk's alleged conduct was extreme and outrageous, we note initially that, in order to meet the requirements of the tort, the defendant's conduct must have been so outrageous that it goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Continental Casualty Co. v. Mirabile,* 52 Md.App. 387, 403, 449 A.2d 1176 (1982) (quoting *Restatement (Second) of Torts* § 46, comment d (1965)). It is also important to remember the warning that the "tort of intentional infliction of emotional distress is rarely viable, and is 'to be used sparingly ...' " *Bagwell v. Peninsula Regional Medical Center,* 106 Md.App. 470, 514, 665 A.2d 297 (1995) (quoting *Kentucky Fried Chicken National Management Co. v. Weathersby,* 326 Md. 663, 670, 607 A.2d 8 (1992)). That said, we also note the long-standing principle that "the extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person which gives him actual or apparent authority over him, or power to affect his interests." *Harris,* 281 Md. at 569, 380 A.2d 611 (quoting *Restatement (Second) of Torts*

§ 46, comment e (1965)). *See also Figueiredo–Torres,* 321 Md. at 654, 584 A.2d 69; *Kentucky Fried Chicken,* 326 Md. at 677, 607 A.2d 8 (Both quoting the same); Richard T. Gilbert & Paul T. Gilbert, *Maryland Tort Law Handbook* § 16.1.3, pgs. 183–84 (1992) (Noting that "[o]rdinarily, liability will not extend to mere insults, threats or indignities; also noting that [a] caveat to that general statement is that, if the actor is in a special relationship to the plaintiff, such as employer to employee, the plaintiff may be entitled to a greater degree of protection from certain acts than if he were a mere stranger."). Following this principle, the *Harris* Court stated that "[i]n cases where the defendant is in a peculiar position to harass the plaintiff, and cause emotional distress, his conduct will be carefully scrutinized by the courts." *Id.*

Certainly, it is these latter concerns which led the Court of Appeals to hold, in *Figueiredo–Torres,* that the plaintiff had stated a cause of action for intentional infliction of emotional distress. There, the plaintiff alleged that he had gone with his wife to see the defendant—a professional psychologist—for marriage counseling; he also alleged that, in the course of treatment, the psychologist had begun a sexual relationship with the wife, thus causing the dissolution of the plaintiff's marriage. In stating its holding, the Court focused on the nature of the officially-sanctioned treatment relationship between the plaintiff and the defendant:

> Coming from a stranger, or even a friend, this conduct may not be outrageous; but we are not prepared to state as a matter of law that such behavior by a psychologist which takes advantage of the patient's known emotional problems is not extreme and outrageous conduct sufficient to support an intentional infliction of emotional distress claim.

321 Md. at 655, 584 A.2d 69.

These same concerns also animated the *dicta* from *Homer v. Long,* 90 Md.App. 1, 599 A.2d 1193 (1992), which is cited by Borchers. There, the plaintiff sued a psychiatrist who, while treating only the plaintiff's wife, allegedly commenced an affair with her. In passing, this Court noted that the psychiatrist's "conduct, as alleged, would be extreme and outrageous

to [the wife], who, so far at least, has not chosen to complain of it." *Id.* at 13, 599 A.2d 1193.

In spite of the holding in *Figueiredo–Torres* and the *dicta* in *Homer,* they do not warrant reversal of this case because of an important distinction: those cases involved officially-sanctioned treatment relationships between the relevant parties; this case, by contrast, does not involve such a relationship. The existence of such a relationship, we believe, places cases like *Figueiredo–Torres* and *Homer* into that rare category where the conduct alleged is extreme enough to merit recovery for intentional infliction of emotional distress. The absence of the special relationship, by contrast, makes this case more like the one of the "friend" referred to by the *Figueiredo–Torres* Court—not quite extreme enough to meet the tort's stringent standard. Thus, in spite of Borchers's allegation that Hyrchuk provided spiritual treatment for her, and her allegation that he "knew of and used Mrs. Borchers [sic] emotional vulnerability and confidential information that she entrusted to him to take advantage of her[,]" her complaint did not state a viable claim for intentional infliction of emotional distress.

## II. Marital Counseling Malpractice

Borchers also argues that the circuit court erred when it dismissed, for failure to state a viable cause of action, her claim for marital counseling malpractice. Again, we disagree.

In her amended complaint,[3] which contained Borchers's marital counseling claim, she alleged the following:

13. As part of the formal education of Seventh–Day Adventist pastors, aspiring pastors receive training in coun-

---

**3.** As to the amended complaint, the court granted summary judgment and stated in pertinent part:

I do not think the allegations are enough to raise those issues. I think that at best what the allegations show is that these two people worked together, that as a result of working together, she knew him, she was having problems that she asked him to talk to her about them, to counsel her, that there is no allegation that he held himself out as a "professional counselor".

seling at Seventh–Day Adventist colleges and then again at Seventh–Day Adventist seminaries. Further, Seventh–Day Adventist pastors receive in-service training in counseling. Defendant Hyrchuk received such training in counseling as part of his formal education and in-service training.

14. The Seventh–Day Adventist Church, including the Potomac Conference[,] encourages its members who are experiencing marital difficulties to seek counseling from its pastors. The Potomac Conference encouraged its parishioners to seek counseling from its pastors when the parishioners were experiencing emotional distress, including emotional distress associated with marital difficulties.

15. All pastors in the Seventh–Day Adventist Church are expected to respond to requests for counseling by providing appropriate counseling.

---

There just is not any allegation that he did that, and I think that is what he has to do, because the law does not posit any duty on him that will be enforced by a court of law and provide for damages for the breach of that duty unless he held himself out as a counselor other than as a religious figure.

In *Cheney v. Bell Nat'l Life Ins.*, 70 Md.App. 163, 166, 520 A.2d 402 (1987), *aff'd*, 315 Md. 761, 556 A.2d 1135 (1989), then Chief Judge Richard P. Gilbert said for the Court:

The purpose of Rule 2–501 is to prevent the unnecessary expenditure of time and money in preparing for trial when there is no genuine dispute of material facts, and the moving party is entitled to judgment as a matter of law.

Along the same vein and speaking for the Court of Appeals in *Goodwich v. Sinai Hosp. of Baltimore*, 343 Md. 185, 205–206, 680 A.2d 1067 (1996), Judge Robert M. Bell (now Chief Judge) said:

Summary judgment is not a substitute for trial. Stated differently, its purpose is not to try the case or resolve factual disputes. Rather, the procedure is designed to determine whether a factual controversy exists requiring a trial. Thus, in keeping with Maryland law, the trial judge is not allowed to weigh evidence. This principle is also expressed in federal case law. ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

(Citations omitted.)

The trial judge merely reasoned that even if the material facts were proven, there was no genuine issue to be tried and that Hyrchuk was entitled to judgment as a matter of law.

16. The relationship between such a counselor and a person seeking counseling is confidential in nature and is fraught with the danger of undue influence and the phenomena known as transference and counter-transference.

17. Defendant Hyrchuk held himself out to Mrs. Borchers as being an appropriate person to provide her with marital and emotional counseling.

18. As a counselor from whom Mrs. Borchers sought counseling and who held himself out to be a ... counselor she could confide her problems to, Pastor Hyrchuk had a duty not to act to injure her or to take advantage of her emotional vulnerability.

19. Pastor Hyrchuk was negligent in that he did not use that degree of care and skill which a reasonably competent professional person acting as a counselor ... in similar circumstances, would use.

The question here is whether these allegations were sufficient to establish a professional counselor-patient relationship between Hyrchuk and Borchers such that Hyrchuk owed Borchers "that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances." *Shilkret v. Annapolis Emergency Hospital,* 276 Md. 187, 200, 349 A.2d 245 (1975). The problem with these allegations is that although they assert that Seventh–Day Adventist pastors receive "counseling" training, that Hyrchuk received such training, and that Hyrchuk held himself out to Borchers as a suitable person to provide marital counseling, they do not state the type of counseling training received, whether it is extensive or cursory, or whether there is an official recognition or certification of the program for such pastors by the church hierarchy. Certainly, there is no allegation of government acknowledgment or licensing. Thus, we hold that the allegations in the amended complaint were not sufficient to establish a professional counselor-patient relationship between Hyrchuk and Borchers, *Cf. Figueiredo–Torres,* 321 Md. at 649–50, 584 A.2d 69 (Where complaint alleged that licensed psychologist held himself out as having expertise in the fields

of marriage-counseling, individual therapy, and family therapy, that psychologist undertook to counsel plaintiff and his wife, and that therapy sessions were designed to help marital problems and conflicts, those allegations were sufficient to establish the existence of a psychologist-patient relationship such that psychologist owed plaintiff a duty of care expected of a reasonably competent practitioner in the same class and acting under the same or similar circumstances); and the circuit court did not err when it dismissed the marital counseling malpractice claim.

## IV. Clergy Malpractice

In the second count of her initial complaint, entitled "Clerical Malpractice," Borchers alleged that Hyrchuk "was negligent in that he did not use that degree of care and skill which a reasonably competent clergyman acting in similar circumstances would use." The circuit court dismissed this count on the ground that Maryland does not recognize the tort of clergy malpractice. Borchers now asks us to recognize the viability of that tort, but we decline to do so.

Our reasons for refusing to recognize clergy malpractice as a cognizable tort in Maryland revolve primarily around our adjudicatory role. As the state's intermediate appellate court, our primary function is to correct error, and not to pronounce new substantive legal rules. Further, when we do pronounce such rules, it is important that our pronouncements have at least some basis in either previous rulings of the Court of Appeals or statute. Neither the Court of Appeals nor the General Assembly have ever indicated that they would recognize the tort of clergy malpractice; and in the absence of such authority, it would be improper for us to recognize such a tort here.

In addition, there are good reasons for declining to recognize the tort of clergy malpractice. As the Supreme Court of New Jersey discussed in *F.G. v. MacDonell,* 150 N.J. 550, 696 A.2d 697 (1997), "such a claim requires definition of the relevant standard of care[,] and [d]efining that standard could embroil courts in establishing the training, skill, and standards

applicable for members of the clergy in a variety of religions with widely varying beliefs." *Id.* 696 A.2d at 703. In addition, "defining such a standard would require courts to identify the beliefs and practices of the relevant religion and then to determine whether the clergyman had acted in accordance with them." *Id.* These requirements, quite obviously, have a large potential to restrain the free exercise of religion; and largely for this reason, no other courts in the United States (including New Jersey) have recognized the tort of clergy malpractice. *Id. See also Dausch v. Rykse,* 52 F.3d 1425, 1432 n. 4 (7 th Cir.1994) (Listing state supreme court decisions holding no cause of action for clergy malpractice).

## V. Gross Negligence

 Borchers also argues that the circuit court erred when it dismissed her gross negligence claim. Again, we disagree.

In that claim, Borchers made the following allegations:

31. Plaintiff realleges all of the foregoing and incorporates the same by reference.

32. Pastor Hyrchuk's negligence aforesaid was gross negligence in that he acted with malice and reckless disregard of the consequences to Mrs. Borchers, said gross negligence being the direct, proximate and foreseeable cause of her injuries which include severe emotional distress and further stress of her marriage.

The problem with this count, as the circuit court correctly concluded, is that it simply restates the earlier claims for marital counseling malpractice and clergy malpractice. For the reasons stated earlier in this opinion, those claims were properly dismissed. Thus, the gross negligence claim was also properly dismissed.

## VI. Vicarious Liability

Finally, Borchers argues that the circuit court erred in ruling that Potomac Conference was not vicariously liable for Hyrchuk's alleged torts. In light of the foregoing discussion, however, it is not necessary to address this issue.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.