**Sondra GREEN**

v.

**THE WILLS GROUP, INC., et al.**

**No. DKC 99–2824.**

United States District Court,
D. Maryland.

Sept. 11, 2001.

Elizabeth M. Fischer, DeCaro & Doran, Lanham, MD, for plaintiff.

Douglas William Desmarais, Smith & Downey, Baltimore, MD, for Wills Group, Inc., defendant.

Morton Edelstein, Baltimore, MD, for Richard Moorer, defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Two motions for summary judgment are pending in Sondra Green's employment discrimination suit. First, The Wills Group, Inc., Plaintiff's former employer, moves for summary judgment on all of the Title VII and state law claims, and second, Richard Moorer, the individual defendant and Plaintiff's former supervisor, moves for summary judgment on the assault claim asserting that it is barred by the statute of limitations, on the claim of intentional infliction of emotional distress on the merits, and on the claim for punitive damages. The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, the motions will be granted in part and denied in part.

## I. Background

Plaintiff was employed by Defendant The Wills Group at their Waldorf, Maryland, Dunkin' Donuts store from 1996 until March 1999, and, during some of that time, Richard Moorer was her supervisor. Her first supervisor, Kevin Conroy, provided her with a stack of papers that included the Sexual Harassment Policy and the Employee Acknowledgment Policy and Procedure Form and told her to sign. He did not explain any of the policies or procedures. Although Plaintiff signed the acknowledgment, she claims not to have "seen" the policy until after Mr. Moorer was terminated. (Paper no. 29, Def. The Wills Group's Mot. for Summ. J., Ex. 4 at 88.) At her deposition, Plaintiff said that she knew about the harassment policy. (Id. at 89.)

At some point, Moorer became Plaintiff's supervisor. Plaintiff's unverified first amended complaint asserts that:

[d]uring the period of about May 1998 until August 1998, Richard [Moorer] at various times assaulted, battered and sexually harassed the Plaintiff. During the period of about May 1998 until August 1998, the Defendant, Richard [Moorer], grabbed without provocation the Plaintiff's buttocks and other body parts. During the period of about May 1998 to August 1998, Defendant, Richard [Moorer], during the course of employment, made numerous sexually suggestive and derogatory comments to the Plaintiff, including but not limited to, suggesting that "Your big lips are good to go down on me" and "What color are your panties?"

First Amended Compl. at ¶ 7.

At her deposition, in contrast, Plaintiff testified that Mr. Moorer slapped her on the buttocks one time and told her that she had a "flat ass" and that he called her "pastel panties" when they worked together, although she worked nights and he worked days. (Paper no. 29, Ex. 4 at 55, 60.)

On or about August 4, 1998, at approximately 3:20 p.m., Plaintiff went to the Wills Group's human resources department and filed a complaint of harassment against Mr. Moorer. The Wills Group initiated an investigation. On August 6, three managers, John Combs, Ray Kozdras, and Jeffrey Hahn met with Mr. Moorer to discuss the allegations. Paper No. 29, Ex. 1 at 1–2.

Plaintiff submitted a cassette recording of a conversation she had with Mr. Moorer in July 1998. On August 7, 1998, the managers met to discuss the tape recording. Id. at 2.

On August 14, 1998, managers met with Plaintiff, asked her questions, and indicated that they took the complaint seriously. They also stated that her allegations were being investigated. Id. at 3.

The Wills Group ultimately decided to, and did, terminate Mr. Moorer on August 18, 1998. Id.

During the time of the investigation, Plaintiff and Mr. Moorer did not work overlapping shifts. Plaintiff acknowledged that the harassment ceased as of the time she registered a complaint with the Human Resources Department. Paper no. 29, Ex. 7 at 29–30.

On January 18, 1999, Plaintiff filed a written complaint with The Wills Group's human resources department, alleging that she was being stalked and harassed by her superiors and expressing her desire to resign as a baker to take a lower paying, less demanding job. Paper no. 29, Ex. 8. Mr. Hahn responded by having his assistant contact Plaintiff to schedule a meeting for the next day. Plaintiff agreed to a meeting, but did not appear. Plaintiff was invited to another meeting, scheduled for January 20, 1999, but again did not attend. Later, at her deposition, she stated that her failure to attend was based on the advice of counsel. She resigned February 20, 1999. Paper No. 34, Pl. Opp. To Def. The Wills Group's Mot. for Summ. J., Ex. F at 7.

In the First Amended Complaint, Plaintiff asserts the following claims:

Count I—Title VII sexual harassment against Wills Group

Count II—Assault against Wills Group and Richard Moorer

Count III—Battery against Wills Group and Richard Moorer

Count IV—Wrongful Discharge against Wills Group

Count V—Negligent hiring against Wills Group

Count VI—Negligent supervision against Wills Group

Count VII—Intentional infliction of emotional distress against Richard Moorer

Count VIII—Intentional infliction of emotional distress against Wills Group.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . neces-

sarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

When the moving party bears the burden of proof, it "may prevail on its motion for summary judgment and establish an affirmative defense when it has produced credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict at trial." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 614 (4th Cir.1999) (internal citations omitted). Once the moving party has successfully produced evidence to establish its affirmative defense, "the burden of production shifts back to the plaintiff who must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal citations omitted).

### III. Analysis

#### A. Richard Moorer

##### 1. *Statute of Limitations*

The Title VII claim in Count I, originally against Mr. Moorer as well as The Wills Group, was dismissed as against Mr. Moorer. He moves for judgment on the assault claim in Count II arguing that Plaintiff missed the one year statute of limitations by filing suit on August 19, 1999. Plaintiff correctly points out, though, that the original complaint was filed on May 3, 1999, and it included the assault count at issue. Accordingly, the claim is not barred by the statute of limitations.

##### 2. *Intentional Infliction of Emotional Distress*

In order to prove the tort of Intentional Infliction of Emotional Distress, a plaintiff must show (1) that the conduct was intentional or reckless, (2) that it was extreme and outrageous, (3) that there is a causal connection between the wrongful conduct and the emotional distress, and (4) that the emotional distress is severe. See, *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (1977). Courts have rarely upheld such claims and the Court of Appeals has cautioned that: "its balm [is] reserved for those wounds that are truly severe and

incapable of healing themselves." *Figueiredo–Torres v. Nickel,* 321 Md. 642, 584 A.2d 69, 75 (1991) (quoting *Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 502 A.2d 1057, 1065 (1986)). See *Batson v. Shiflett,* 325 Md. 684, 602 A.2d 1191, 1216 (1992) (identifying only three instances in which such claims were upheld).

▮ Plaintiff has failed to substantiate her Intentional Infliction of Emotional Distress claim in this case because Mr. Moorer's conduct is not sufficiently outrageous to meet the standards set forth in *Harris.* In order for the conduct to meet this standard, not only must the conduct be "so extreme in degree as to go beyond all possible bounds of decency", but the court must also examine the "personality of the individual to whom the misconduct is directed." *Batson,* 325 Md. at 733–34, 602 A.2d 1191 (internal citations omitted). Plaintiff submitted evidence to her employers of taped conversations with Mr. Moorer where she was heard laughing multiple times at his comments about her panties and asking him if he had cheated on his wife. Plaintiff seems to be an active participant in these conversations and her amusement at the inappropriate comments of Mr. Moorer does not indicate that she experienced emotional distress.

▮ Even if Plaintiff had more clearly demonstrated emotional distress as a result of Mr. Moorer's conduct, his conduct does not rise to a level that meets the test of outrageousness that is required to establish a claim for intentional infliction of emotional distress. According to the Restatement the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" and conduct which is "intended to inflict emotional distress, or ... has been characterized by 'malice' is not sufficient to establish outrageousness." Restatement (Second) of Torts § 46 cmt. d

(1965). Taking the facts asserted by the Plaintiff in a light most favorable to her, she has not proven that the conduct of Mr. Moorer was sufficiently outrageous to sustain the first prong of this specialized tort. She herself laughed at his comments and has not submitted any evidence which indicates malice or intent on the part of Mr. Moorer. Accordingly, summary judgment will be granted in favor of Mr. Moorer on Count VII.

### 3. *Punitive Damages*

▮ In her complaint, Plaintiff sued for punitive damages under her Maryland state law claims. Under Maryland law, Plaintiff must prove that Defendant had actual malice in order to obtain punitive damages based on intentional and nonintentional torts. *Bowden v. Caldor,* 350 Md. 4, 710 A.2d 267, 276 (1998) (internal citations omitted). Actual malice is defined as "conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Id.* Punitive damages will not be granted "based on any theory of 'implied malice,' either in the sense of gross negligence or in the sense of inferring malice from an element of the tort." *Id.* (citing *Montgomery Ward v. Wilson,* 339 Md. 701, 664 A.2d 916, 929–30 n. 5, 932–33 (1995)).

▮ Plaintiff contends that she has met the burden of proving actual malice with Moorer's testimony admitting that his actions were against company policy. However, punitive damages under both state and federal law require a clear showing of malice which is not met by the Defendant simply admitting that his actions were wrong. Moorer specifically stated in his deposition that he was "joking or playing the dozens" and that "the whole thing was a joke." Paper No. 31, Pl. Reply to Def. Moorer's Mot. for Summ. J., Ex. F at 36, 38, & 39. Plaintiff argues

that "present in his actions is intent, as well as, ill will and evil motive" but fails to provide any evidence beyond her allegation. The only evidence Plaintiff points to does not establish evil intent, rather it negates evil intent since Moorer states repeatedly he believed their exchanges were jokes. Accordingly, Summary Judgment will be granted for Mr. Moorer on the issue of punitive damages.

## B. The Wills Group

The Wills Group moves for summary judgment on all of the claims against it, on the following grounds: (1) the alleged harassment was not unwelcome, severe, or pervasive, (2) plaintiff's delay in following the anti-sexual harassment policy bars relief, (3) the wrongful discharge claim is barred because Title VII provides a remedy, (4) the claims for assault, battery, and intentional infliction of emotional distress are barred by respondeat superior, and (5) plaintiff cannot prove her claims for negligent hiring or supervision.

### 1. *Sexual Harassment*

 An employer is not subject to vicarious liability for sexual harassment that does not affect a tangible employment benefit if the employer proves that it exercised reasonable care in preventing and promptly correcting any sexually harassing behavior, and that the plaintiff unreasonably failed to take advantage of preventive or corrective opportunities. See *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (holding employer vicariously liable for actionable environment created by supervisor, but an affirmative defense of reasonable care is available).

 Refinements on these general propositions in the law of this circuit include (1) distribution of an anti-harassment policy provides "compelling proof" that the defendant exercised reasonable care in preventing and promptly correcting sexual harassment unless plaintiff shows that the employer adopted or administered the policy in bad faith or that the policy was otherwise defective or dysfunctional, *Barrett v. Applied Radiant Energy Corporation*, 240 F.3d 262, 266 (4th Cir.2001), (2) an immediate investigation and subsequent discipline of the harassing employee is sufficient to establish that defendant exercised reasonable care to correct promptly any sexually harassing behavior, *Brown v. Perry*, 184 F.3d 388, 398 (4th Cir.1999), and (3) failure by the employee to recall their orientation and to report harassment does not establish that the employer lacked reasonable care. *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261 (4th Cir.2001). Therefore, The Wills Group can escape liability if it proves by a preponderance of the evidence that they complied with the standard set forth in *Burlington* and *Faragher*, even if Mr. Moorer did engage in actionable harassment. *Brown v. Perry*, 184 F.3d 388, 395 (4th Cir.1999).

There is no dispute that The Wills Group had promulgated an anti-harassment policy prior to Plaintiff's employment.[1] There also does not appear to be a dispute that Defendant's policy required that the policy be distributed upon hiring

---

**1.** The written policy, effective July 22, 1994, states that The Wills Group would not tolerate any harassment and emphasized that "sexual harassment is specifically prohibited." An employee who believes he or she has been subject to harassment is directed to tell the individual they find the behavior offensive and ask that it be stopped and "report or register a complaint about the conduct as soon as possible to the Human Resources Department and, where appropriate to his/her supervisor or to the Executive in Charge."

and that the employee certify having received and read it.

Plaintiff contends that the existence of Defendant's anti-harassment policy is not sufficient and that the evidence is conflicting on whether it exercised reasonable care to prevent and correct the alleged harassment. Specifically, Plaintiff points to her own testimony that she did not see the policy until after the harassment, that Mr. Moorer only vaguely recalls having learned of the policy during his own orientation, and that Mr. Brown, to whom Plaintiff allegedly complained first, did not take any action. None of these points overcome the showing made by Defendant. The employer did what it could to provide notice to Plaintiff and has evidence that it followed its own procedures to try to disseminate the policy appropriately. It is immaterial just when Mr. Moorer learned of the policy, because he acknowledged its existence by his resignation when confronted about his behavior. Finally, informal notice to Mr. Brown is not notice to the employer, in conformity with the stated policy, which clearly provides for notice to the Human Resources Department. Plaintiff did not pursue the available avenues of corrective action in a timely manner and when she did, prompt action resulted.

Accordingly, even if Mr. Moorer's conduct can be said to constitute sexual harassment, The Wills Group has established the affirmative defense as a matter of law on this record and summary judgment will be entered in its favor on count I.

2. *Wrongful Discharge*

The Wills Group contends, citing to *Makovi v. Sherwin–Williams, Co.*, 316 Md. 603, 561 A.2d 179 (1989), that Plaintiff's wrongful discharge claim in count IV fails because there is a remedy provided for the alleged wrongful conduct in employment discrimination statutes. Plaintiff does not contest that legal assertion, but rather appears to contend that she has asserted a Title VII retaliation claim. Count IV of the complaint is titled as a claim for wrongful discharge. It alleges constructive discharge, violative of public policy embodied in 42 U.S.C. § 2000(e) and § 2–186— § 2–222 of the Prince George's County Code. The word or concept of retaliation is absent from the complaint, except to the extent that she alleges that the constructive discharge occurred after she filed a claim with the Maryland Commission on Human Relations.

The evidence, moreover, is not sufficient to support a retaliatory constructive discharge claim. Plaintiff resigned her employment. In order to prove constructive discharge, a plaintiff must prove that conditions were so intolerable that a reasonable person would have felt compelled to resign. Plaintiff has not come forward to forecast sufficient evidence in that regard. After Mr. Moorer was discharged, Plaintiff again complained of harassment, but then deliberately refused to meet with the Human Resources Department (ostensibly on her attorney's advice). It is impossible for her to contend that the employer deliberately made working conditions so harsh as to compel resignation when she fails to work with them to remedy the atmosphere. Accordingly, summary judgment will be entered in favor of The Wills Group on count IV.

3. *Assault, Battery, Intentional Infliction of Emotional Distress*

As stated in *Thomas v. Bet Sound–Stage Restaurant*, 61 F.Supp.2d 448, 453–54 (D.Md.1999), under Maryland law, an employer is not vicariously liable for the torts of assault and battery based on sexual assaults by another employee as they are outside the scope of employment.

Thus, the Wills Group is entitled to summary judgment on those claims, counts II and III, and on the claim of Intentional Infliction of Emotional Distress, count VIII, for the reasons stated above.

### 4. *Negligent Hiring and Supervision*

 Plaintiff has not specifically responded to Defendant's motion for summary judgment on these claims. Rather, she merely argues that all facts are in dispute. That is not sufficient at this stage, and it is Plaintiff's burden to produce an appropriate forecast of evidence to support each element of her claims upon which she has the burden of proof. Accordingly, summary judgment will be granted to Defendant on Counts V and VI.

### IV. Conclusion

For the foregoing reasons, summary judgment will be entered in favor of The Wills Group on all claims against it and in favor of Mr. Moorer on the intentional infliction of emotional distress claim and the claim for punitive damages. Remaining for trial are the assault and battery claims against Mr. Moorer in counts two and three. A separate order will be entered.